**KRONENBERGER BURGOYNE, LLP**
Karl S. Kronenberger (Bar No. 226112)
Henry M. Burgoyne III (Bar No. 203748)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158

Attorneys for Assignee DS HOLDINGS, LLC

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OFFICE DEPOT, INC.,** a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**JOHN ZUCCARINI,** individually and d.b.a. COUNTRY WALK; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. C-06-80356-Misc.<br><br>**DECLARATION OF KARL S. KRONENBERGER IN SUPPORT OF DS HOLDINGS' APPLICATION FOR APPOINTMENT OF RECEIVER** |
| **DS HOLDINGS, LLC,** a Colorado limited liability company,<br><br>Assignee,<br><br>vs.<br><br>**JOHN ZUCCARINI,** individually and d.b.a. COUNTRY WALK; and DOES 1 through 10, inclusive,<br><br>Defendants. | |

I, Karl S. Kronenberger declare as follows:

1. I am an attorney admitted to practice in the State of California and the United

States District Court for the Northern District of California. I am a partner at the law firm of Kronenberger Burgoyne, LLP, counsel of record for judgment creditor DS Holdings, LLC ("DS Holdings"). Unless otherwise stated, I have personal knowledge of the facts stated herein.

## Background

2.  On December 14, 2000, the District Court of the Central District of California entered a judgment in this case for Office Depot as judgment creditor, and against John Zuccarini ("Zuccarini"), individually and *d.b.a.* Country Walk, as judgment debtor, in the amount of $100,000, together with the costs of the action and $5,600 in attorneys' fees (the "Judgment").

3.  Office Depot assigned the right to receive payment of $100,000, together with the costs of the action, $5,600 in attorneys' fees, and interest as may be provided by law, to DS Holdings. A notice of the assignment was filed with the Court on October 5, 2006. The Court has issued a Writ of Execution against Zuccarini, a true and correct copy of which is attached hereto as Exhibit A.

4.  Since the date the Judgment was entered, interest has accrued daily in the amount of ten percent (10%) per year on the principal amount of the judgment remaining unsatisfied, pursuant to California Code of Civil Procedure Section 685.010(a). The daily interest accrual is $28.93, and the total amount accrued since the date the judgment was entered is $169,133

5.  In the more than six years since the Judgment was entered, Office Depot was unable to collect any money from Zuccarini, primarily because Office Depot experienced great difficulty identifying any traceable assets that might be levied upon.

6.  Following entry of the Judgment, Zuccarini was convicted of a felony arising directly from his misuse of certain of his domain name holdings. On December 10, 2003, Zuccarini pleaded guilty to violations of the federal Truth in Domain Names Act

(18 U.S.C. 2252B(b)) and to possession of child pornography in violation of 18 U.S.C. Section 2252A(a)(5)(B). As a result of those convictions, Zuccarini was sentenced on February 26, 2004, to thirty months in prison. True and correct copies of the United States Attorney for the Southern District of New York's press releases regarding Zuccarini are attached hereto as Exhibit B.

### Domain Names Generally

7.      The official "registry" for all .net and .com domain names is Verisign, Inc., ("Verisign") which is located in the Northern District of California (the "District"). The Verisign registry contains the definitive directory that associates registered.com and .net domain names with the corresponding IP numbers on their respective domain name servers. Verisign derives its authority as the official .com and .net registry from a contract with the nonprofit Internet Corporation for Assigned Names and Numbers ("ICANN"), which oversees Internet operations on behalf of the US Government[1]. As the official registry, Verisign has ultimate authority and control over the ownership and registration of .com and .net domain names. For this reason, DS Holdings has brought this collection action in the District.

8.      To assist Verisign with the day-to-day registration of domain names, ICANN contracts with, and accredits, multiple domain name registrars (See ICANN's website for a definitive list of accredited registrars: http://www.icann.org/registrars/accredited-list.html). These independent registrars coordinate with Verisign in maintaining Verisign's central domain name registry. The complete and official ownership record pertaining to each domain name, however, resides with the independent registrar that, on behalf of the domain name owner, registered the domain name. Nonetheless, ultimate control of the domain names is in the hands of the registry.

---

[1] *See* May 25, 2001 .com Registry Agreement between Verisign and ICANN, which may be found at http://www.icann.org/tlds/agreements/verisign/, in addition to the .net and .org Registry Agreements. DS Holdings previously requested that the Court take judicial notice of this publicly available, and lengthy, document.

Case No. C-06-80356-Misc.   3   **KRONENBERGER DECL. ISO APP. FOR APPOINTMENT OF RECEIVER**

9. Pursuant to their agreements with ICANN, domain name registrars are required to make available to the public information about who is responsible for domain names to allow rapid resolution of technical problems and to permit enforcement of consumer protection, trademark, and other laws. The registrar makes this information available to the public on a WHOIS website.

10. As a practical matter, however, public access to ownership and registration information is limited in that most independent registrars permit the public to search their WHOIS databases *only* by domain name (*i.e.* searches by registered owner or email address are prohibited). As a result, WHOIS databases are of little use to judgment creditors, like DS Holdings, which seek to identify the domain name registrations held by others.

11. Generally speaking, the WHOIS ownership record of a domain name can be changed at any time by the registered owner or someone working on behalf of the registered. To change an ownership record, all a registered owner needs to do is log into his or her domain name account with the registrar and then change the "registrant" field associated with the domain name. As such, a change to mask the true owner of a domain may be made in seconds, and so long as the owner maintains control of the listed "administrator" email address—which can also be changed at any time by the owner—the owner maintains control of the domain name. Registrars are under no obligation to verify a registrant's change in his or her WHOIS record.

12. One way a domain name registrant can transfer a domain name is by first updating the WHOIS information for that domain name to list the contact information for the transferee. Next, the domain name transferor provides to the transfee the login information to access the domain name registration at the registrar's website.

### Identification of Zuccarini's Domain Name Holdings

13. Through the use of Internet search engines and public WHOIS databases, DS

Case No. C-06-80356-Misc.    4    KRONENBERGER DECL. ISO APP. FOR APPOINTMENT OF RECEIVER

Holdings identified fourteen names and pseudonyms and four email addresses that Zuccarini used in administering his domain name holdings. Using those names and email addresses, and with the aid of additional investigative tools, DS Holdings identified hundreds of domain names that DS Holdings believed to be owned by Zuccarini. Zuccarini holds or has held domain names in the following registrant names: John Zuccarini, Country Walk, Cupcake Party, CupcakeParty, Cupcake-Party, Cupcake-Parties, Cupcake Shows, Cupcake City, The Cupcake Patrol, Cupcake Patrol, Party Night, Inc., Peter Carrington, JZ Design, and Cupcake Confidential.

14. DS Holdings sought, and on February 21, 2007 the Court ordered Zuccarini, and any third party registrars receiving notice, to provide documents sufficient to evidence the domain name holdings of Zuccarini (the "Order").

15. After the Court issued the Order, my office promptly served the Order on all known registrars of domain names held by Zuccarini. Specifically, my office served the Order on Network Solution, LLC ("Network Solutions"); 2) Computer Services Langenback GmbH *dba* Joker.com ("Joker.com"); 3) eNom, Inc. ("eNom"); 4) Key-Systems GmbH ("Key-Systems"); and 5) I.D.R. Internet Domain Registry Ltd ("I.D.R.") (collectively, the "Registrars")

16. On March 1, 2007, my office received documents from Network Solutions in response to the Order. The response from Network Solutions listed ninety-seven (97) domain names. A true and correct copy of this list is attached hereto as Exhibit C.

17. On March 22, 2007, my office received documents from eNom in response to the Order. The response from Enom listed twenty-eight (28) domain names. A true and correct copy of this list is attached hereto as Exhibit D.

18. On March 16, 2007, my office received documents from Key-Systems in response to the Order. The response from Key Systems listed ninety-one (91) domain names. A true and correct copy of this list is attached hereto as Exhibit E.

19. On March 23, 2007, my office received documents from I.D.R. in response to

the Order. The response from I.D.R. listed ten (10) domain names. A true and correct copy of this list is attached hereto as Exhibit F.

20. On March 2, 2007, my office served Interrogatories and Document Requests on Zuccarini. DS Holdings requested a list of all domain names owned by Zuccarini or his aliases or alter egos. True and correct copies of these discovery requests are attached hereto as Exhibit G.

21. On March 19, 2007 and April 10, 2007 Zuccarini responded to DS Holdings' discovery requests with a list of all domain names that he claimed to own, which is attached hereto as Exhibit H.

22. Zuccarini also provided a list of all of the alter egos and aliases that he claimed to have used to register and maintain registrations for his domain names. A true and correct copy of this list is attached hereto as Exhibit I.

### A Comparison of Zuccarini's Admissions to Domain Lists Produced by the Registrars

23. <u>Network Solutions (90 domain names to be transferred)</u>. After receiving the information described above, I compared the list of domain names provided by Zuccarini to the list of ninety-seven (97) Zuccarini domain names provided by Network Solutions. All of the domain names provided by Zuccarini were contained in the list provided by Network Solutions. However, seven domain names contained in the Network Solutions' list were not contained in the list provided by Zuccarini (namely, chattrooms.com, elizabethhurly.com, physicreading.com, physicreadings.com, psychicreading.org, psychiczone.net, 416forsale.com). Based on this discrepancy, I removed the additional names from the list of Network Solutions' domain names held by Zuccarini. Once I removed these seven domain names from the list—the ownership of which had not been admitted by Zuccarini—the list of Network Solutions-registered domain names for transfer to the court contained ninety (90) domain names.

24. <u>eNom (28 domain names to be transferred)</u>. Similarly, I compared the list of

domain names provided by Zuccarini to the list of twenty eight (28) Zuccarini domain names provided by eNom. All of the domain names provided by Zuccarini are contained in the list provided by eNom, with the exception of two domain names (50sent.com and nakri.com). I examined the registrations for each of these two domain names omitted from the list provided by Zuccarini, and confirmed that in fact, each of these two domain names is registered to "John Zuccarini." True and correct copies of the WHOIS data for these registrations are attached hereto as Exhibits J & K.

25. <u>Key-Systems (93 domain names to be transferred)</u>. Similarly, I compared the list of domain names provided by Zuccarini to the list of Zuccarini domain names provided by Key-Systems. Only ninety one (91) of the domain names Zuccarini listed are still available (*i.e.* the registrations for 13 of the domain names Zuccarini provided have lapsed and are no longer held by Zuccarini). Additionally, there are two domain names that Zuccarini identified, which Key-Systems did not include (namely, dicionario.de and dicionarios.de). I examined the registration records for these two domain names, and confirmed that both of the domain names are in fact registered to "John Zuccarini." After adding these two domain names that were not in Key-Systems' list, the list of Key-Systems-registered domain names contains ninety-three (93) domain names. True and correct copies of the WHOIS data for dicionario.de and dicionarios.de are attached hereto as Exhibits L & M.

26. <u>I.D.R. Internet Domain Registry (10 domain names to be transferred)</u>. Zuccarini provided DS Holdings with a list of ten (10) domain names registered with I.D.R. I compared this list of domain names provided by Zuccarini to the list of ten (10) Zuccarini domain names provided by IDR. All of the domain names provided by Zuccarini are contained in the list provided by IDR. Additionally, I examined each of the registration records for these ten domain names, and all of the domain names are registered to "John Zuccarini."

27. <u>Joker.com (27 domain names to be transferred)</u>. Zuccarini provided DS

Holdings with a list of twenty-six (26) domain names that Zuccarini had registered with Joker.com. I examined each of the registration records for these twenty-six domain names, and confirmed that all of the domain names are registered to "John Zuccarini."

### Zuccarini's Domain Name Holdings

28. Based on the information set forth above, and the exhibits attached to this Declaration, Exhibit N sets forth the complete and accurate listing of all domain name registrations held by Zuccarini, known to DS Holdings at this time.

### Communications with Domain Name Registrars

29. After DS Holdings obtained its Writ of Execution against Zuccarini, I initiated communications with the third party registrars at issue here, and in particular, with Michael Mauseth of the general counsel's office of Network Solutions. Mr. Mauseth made clear to me that Network Solutions would not change the WHOIS information or otherwise transfer any of Zuccarini's domain name to the United States Marshal or DS Holdings absent a court order directing them to do so or the appointment of the United States Marshal as a receiver for Zuccarini's domain names.

### Coordination with the U.S. Marshal Service re: Procedure for Public Auction

30. I coordinated with the U.S. Marshal Service in order to confirm that the particular public auction process proposed by DS Holdings is the appropriate process for this matter. The U.S. Marshal instructed DS Holdings that the correct procedure in this matter is to obtain an order from the Court transferring the domain name holdings to DS Holdings, for a public auction under the direction of the U.S. Marshal.

//
//
//

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED: June 25, 2007.

_____
Karl S. Kronenberger