IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OFFICE DEPOT, INC., | No. C 06-mc-80356 SI |
| Plaintiff, | **ORDER GRANTING APPLICATION FOR APPOINTMENT OF RECEIVER** |
| v. | |
| JOHN ZUCCARINI, et al., | |
| Defendants. | |
| DS HOLDINGS, LLC, | |
| Assignee, | |
| v. | |
| JOHN ZUCCARINI, et al., | |
| Defendants. | |

On September 7, 2007, the Court heard argument on the ex parte application of assignee DS Holdings, LLC ("DS Holdings") for appointment of a receiver to aid in the turnover of internet domain names owned by judgment debtor John Zuccarini, so that they may be auctioned off to satisfy the judgment. Having considered the arguments of the parties and the papers submitted, and for good cause shown, the Court hereby GRANTS DS Holdings' motion.

**BACKGROUND**

On December 14, 2000, the District Court for the Central District of California entered a judgment for Office Depot, against Zuccarini individually and d.b.a. "Country Walk," in the amount of

$100,000 with an additional $5,600 due in attorney's fees. Office Depot subsequently assigned the right to receive all payments under the judgment, including interest, to DS Holdings. On December 19, 2006, this Court issued a Writ of Execution of Judgment, pursuant to California Code of Civil Procedure section 699.510, for the recovery of Zuccarini's outstanding debt. On February 20, 2007, this Court issued an order requiring the production and preservation of documents relating to Zuccarini's substantial domain name portfolio. The Court subsequently denied, as procedurally improper, a request by DS Holdings to add pseudonyms used by Zuccarini to the Writ of Execution of Judgment. Most recently, on May 15, 2007, the Court denied DS Holdings' request for a turnover order from the Court requiring third-party domain name "registrars" to turn over internet domain names owned by Zuccarini.

DS Holdings now seeks the appointment of a receiver to aid in the turnover of Zuccarini's domain names. Zuccarini, acting *pro se*, has filed an opposition to the application, and appeared telephonically at the hearing.

## LEGAL STANDARD

Federal Rule of Civil Procedure 69(a) provides for the execution of money judgments. It states, in pertinent part:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable.

Fed. R. Civ. P. 69(a).

California Code of Civil Procedure section 708.620 allows the Court to appoint a receiver to aid in recovery of a money judgment, in certain circumstances. It provides: "The court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment." § 708.620.

//

## DISCUSSION

In opposition to DS Holdings' application for appointment of a receiver, Zuccarini raises a more fundamental issue: whether the Northern District of California is the appropriate place to levy upon the domain names at issue.[1]  This is apparently an issue of first impression.

The California Code of Civil Procedure provides: "after entry of a money judgment, a writ of execution shall be issued by the clerk of the court upon application of the judgment creditor and shall be directed to the levying officer *in the county where the levy is to be made . . . .*"  Cal. Code Civ. P. § 699.510(a) (emphasis added).  Thus, the Northern District is the appropriate place to direct a writ of execution only if it contains "the county where the levy is to be made."  Under the California Code of Civil Procedure, levy is "made" in a variety of ways, depending on the type of property.  *See id.* §§ 700.010-700.200.[2]  In all cases, however, the property exists in some form in the county.  *See id.*

The first inquiry here, therefore, is whether domain names constitute "property" for purposes of the California Code of Civil Procedure.  If they do, the second inquiry is where the property comprising or containing the domain names exists.

These inquiries first require a basic exploration of what a domain name is.  Judge Whyte's decision in *Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 464 F. Supp. 2d 948, 951-53 (N.D. Cal. 2006), provides a helpful explanation of domain names, registrars, and registries.

---

[1] Zuccarini also argues that these proceedings are inappropriate because the district court for the Eastern District of Pennsylvania "retains Federal Jurisdiction for the ownership and use of the domain names that are the subject of this legal action," Oppo. ¶ 2, and has frozen Zuccarini's assets, including the domain names at issue here.  The Court has reviewed the injunctions issued by the Eastern District of Pennsylvania related to Zuccarini, and finds that they do not prevent a change in ownership of the domain names at issue.  *See* Zuccarini Decl., Exs. 1-3.  The injunctions prevent Zuccarini from modifying the ownership of the domain names, but they do not prevent this Court from modifying such ownership.  Nor do the injunctions award ownership of the domain names at issue to another party.

[2] The categories of property for which the California Code of Civil Procedure provides procedures for levy are: "Growing crops, timber to be cut or minerals," § 700.020; "Tangible personal property in possession of judgment debtor," § 700.030; "Tangible personal property in possession of third person," § 700.040; "Personal property in custody of levying officer," § 700.050; "Bailed goods not covered by negotiable document of title," § 700.060; "Tangible personal property of going business," § 700.070; "Personal property used as dwelling," § 700.080; "Vehicle, vessel, manufactured home, mobilehome, or commercial coach," § 700.090; "Chattel paper," § 700.100; "Instruments," § 700.110; "Negotiable documents of title," § 700.120; "Securities," § 700.130; "Deposit accounts," § 700.140; "Safe deposit boxes," § 700.150; and "Deposit accounts and safe deposit boxes not exclusively in name of judgment debtor," § 700.160.

None of these categories clearly cover domain names, though some are roughly analogous.

Every computer connected to the Internet has a unique Internet Protocol ("IP") address. IP addresses are long strings of numbers, such as 64.233.161.147. The Internet DNS[3] provides an alphanumeric shorthand for IP addresses. The hierarchy of each domain name is divided by periods. Thus, reading a domain name from right to left, the portion of the domain name to the right of the first period is the top-level domain ("TLD"). TLDs include .com, .gov, .net., and .biz. Each TLD is divided into second-level domains identified by the designation to the left of the first period, such as "example" in "example.com" or "example.net." . . . . Each domain name is unique and thus can only be registered to one entity.

A domain name is created when it is registered with the appropriate registry operator[4]. A registry operator maintains the definitive database, or registry, that associates the registered domain names with the proper IP numbers for the respective domain name servers. The domain name servers direct Internet queries to the related web resources. A registrant can register a domain name only through companies that serve as registrars for second level domain names. Registrars accept registrations for new or expiring domain names, connect to the appropriate registry operator's TLD servers to determine whether the name is available, and register available domain names on behalf of registrants. . . .

The majority of domain name registrations for commercial purposes utilize the .com TLD. . . .

. . . .

In the past ICANN[5] has selected the registry operator for the .com and .net TLDs through a bidding process. Once a registry operator is selected, it serves as the sole registry operator for the applicable TLD registry (.com or .net) until the expiration of the registry agreement. Currently, VeriSign is the registry operator for the .com and .net domains pursuant to written registry agreements between ICANN and VeriSign.

*Id.* at 951-53 (citations omitted).

In this case, DS Holdings sought a writ of execution in this district because the .net and .com registry, VeriSign, is located here. The registrars of the domain names at issue, however, are not located in this district; they are located in Virginia, Germany, Washington, and Israel. One issue, therefore, is whether the domain names exist at the registry, or at the registrars. Before reaching this issue, however, the Court must address whether, even if they exist in this district, domain names are "property" subject to levy under the California Code of Civil Procedure.

---

[3]Domain name system.

[4]Registry operators are also referred to simply as "registries."

[5]"ICANN is a private not-for-profit corporation that coordinates the Internet domain name system ('DNS') on behalf of the United States Department of Commerce." *Id.* at 951.

4

In *Kreman v. Cohen*, 337 F.3d 1024, 1029 (9th Cir. 2003), the Ninth Circuit addressed the issue of "whether registrants have property rights in their domain names," under California law. The court answered in the affirmative, concluding that a registrant has "an intangible property right in his [or her] domain name . . . ." *Id.* at 1030.[6]

As "intangible property," domain names appear to be covered by the California Code of Civil Procedure levy provisions. Section 695.010 thereof provides: "Except as otherwise provided by law, *all property* of the judgment debtor is subject to enforcement of a money judgment." (emphasis added). Section 699.710 provides, in pertinent part, that "all property that is subject to enforcement of a money judgment . . . is subject to levy under a writ of execution to satisfy a money judgment." Accordingly, the Court concludes that domain names owned by Zuccarini and existing in California are subject to levy under a writ of execution.

As mentioned, the second issue is whether the domain names are located in this district. DS Holdings contends that because the .com and .net registry, VeriSign, is located in this district, the domain names at issue are also located here. DS Holdings' argument is strongly supported by the Anticybersquatting Consumer Protection Act of 1999 ("ACPA"), 15 U.S.C. § 1125(d). Under ACPA, Congress provided for *in rem* jurisdiction over domain names, in certain circumstances, "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located . . . ." 15 U.S.C. § 1125(d)(2)(A). ACPA also provides: "In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which . . . the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located . . . ." *Id.* § 1125(d)(2)(C)-(C)(i). ACPA thus strongly suggests an intent on the part of the United States Congress to treat domain names as property existing in both the location of the registry, and the location of the registrar. *See also Mattel v. Barbie-club.com*, 310 F.3d 293, 302 (2d Cir. 2002) ("it is the presence of the domain name itself – the 'property that is the subject of the jurisdiction' – in the judicial district in which the registry or registrar is located

---

[6]The Supreme Court of Virginia reached the opposite conclusion in *Network Solutions, Inc. v. Umbro International, Inc.*, 529 S.E.2d 80, 86-87 (Va. 2000), holding that domain name registration creates merely a contract for services, not an intangible property right, and under Virginia law, contractual rights to services could not be garnished to satisfy a money judgment.

5

1  that anchors the in rem action and satisfies due process and international comity.").

2  While ACPA suggests this is the appropriate court to oversee levy of the domain names,
3  Zuccarini argues that practical considerations suggest otherwise. The registrars handle the day to day
4  management of domain names. The registry, in fact, apparently never interacts with domain name
5  owners. Zuccarini argues, therefore, that anyone who wants to alter the ownership of a domain name,
6  including a sheriff or marshal seeking to execute a judgment, must do so through the registrars. This
7  practical consideration is highlighted by the fact that in this case DS Holdings has interacted solely with
8  the registrars in its attempts to levy upon the domain names. To the Court's knowledge, DS Holdings
9  has not interacted with the registry – VeriSign – and does not seek to do so. *See, e.g.,* Mot. at 7:27-8:2
10 ("If a receiver were appointed, the registrars could change the domain names' registration information
11 to name the receiver instead of Zuccarini."). As discussed above, writs of execution are directed to the
12 county where levy is to be made. If these proceedings force the registrars to change the ownership of
13 the domain names, then arguably levy will be made at the locations of the registrars, which in this case,
14 all fall outside of the Northern District. *See* § 701.010 ("when levy is made . . . on a third person, the
15 third person . . . . shall deliver to the levying officer any of the property levied upon that is in the
16 possession or under the control of the third person at the time of levy . . . .").

17 Despite the day to day control registrars exhibit over the ownership of domain names, however,
18 the registry maintains the records that ultimately determine the existence and ownership of domain
19 names. *See Mattel*, 310 F.3d at 296 n.2 ("The domain name 'registry' . . . is the single official entity
20 that maintains a list ('a registry') of all 'top-level' domain names and that maintains all official records
21 regarding the registrations of such names.") (citing David Bender, *Computer Law* § 3D.03[3] at 3D-56).
22 In the internet hierarchy, registrars answer to the registries. Furthermore, under ACPA, at least one
23 district court has forced a registry, rather than a registrar, to change the ownership of a domain name.
24 *See America Online, Inc. v. AOL.org*, 259 F. Supp. 2d 449 (E.D. Va. 2003). Thus, if the location of a
25 domain name is determined based on the location of the party with "control" over ownership of the
26 domain name, then the location of the registry is as good as any.

27 In light of the foregoing, faced with the somewhat metaphysical question of where the intangible
28 property comprising a domain name exists, this Court will follow Congress' suggestion in ACPA that

6

a domain name exists in the location of both the registrar and the registry. As such, this is the appropriate Court to oversee levy upon domain names listed on the VeriSign registry.

The Court also finds that it is appropriate to appoint a receiver, to which the domain names can be transferred. *See* Kronenberger Decl. ¶ 29. DS Holdings has shown that, "considering the interests of both the judgment creditor and the judgment debtor, the appointment of a receiver appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment." California Code of Civil Procedure § 708.620. Accordingly, the Court GRANTS DS Holdings' request to appoint Michael W. Blacksburg as receiver.[7]

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS DS Holdings' request for appointment of a receiver. [Docket No. 18]

**IT IS SO ORDERED.**

Dated: September 10, 2007

SUSAN ILLSTON
United States District Judge

---

[7] The Court is concerned, however, with DS Holdings' ultimate plan to auction off the domain names at issue. As Zuccarini points out, many of the domain names at issue are deliberate misspellings and variations of legitimate domain names, both generic and proprietary. Such names may have legitimate purposes, as counsel argued at the hearing, but they may also be used to misdirect consumers, as apparently Zuccarini himself did.