**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

OFFICE DEPOT INC.,
    *Plaintiff-Appellee*,

DS HOLDINGS, LLC,
    *Assignee-Appellee*,

v.

JOHN ZUCCARINI, doing business as Country Walk,
    *Defendant-Appellant*.

No. 07-16788

D.C. No. CV-06-80356-SI

OPINION

Appeal from the United States District Court
for the Northern District of California
Susan Yvonne Illston, District Judge, Presiding

Argued and Submitted
July 17, 2009—San Francisco, California

Filed February 26, 2010

Before: Cynthia Holcomb Hall, William A. Fletcher and
Richard A. Paez, Circuit Judges.

Opinion by Judge William A. Fletcher

## COUNSEL

John Zuccarini, Pro se, Stuart, Florida, defendant-appellant.

Michael Woodrow De Vries, Latham & Watkins LLP, Costa Mesa, California, for the plaintiff-appellee.

Henry M. Burgoyne III, Karl S. Kronenberger, Kronenberger Burgoyne LLP, San Francisco, California, for the assignee-appellee.

## OPINION

W. FLETCHER, Circuit Judge:

John Zuccarini is a judgment debtor who owns the rights to many Internet domain names. DS Holdings ("DSH") is the assignee of the judgment against Zuccarini. DSH attempted to levy upon Zuccarini's domain name holdings in the Northern District of California where VeriSign, the official registry for all ".com" and ".net" domain names, has its headquarters. The district court appointed a receiver to take control of and auction off some of Zuccarini's domain names in order to satisfy the judgment.

Zuccarini appeals, contending that the Northern District of California is not a proper place to levy upon his domain names and that the appointment of the receiver was therefore improper.

We affirm.

Case: 07-16788  03/24/2009  Page: 3 of 12  DktEntry: 34-1

OFFICE DEPOT v. ZUCCARINI  3123

### I. Background

In December 2000, Office Depot obtained a judgment against Zuccarini under the Anticybersquatting Consumer Protection Act of 1999 ("ACPA"), 15 U.S.C. § 1125(d), arising out of Zuccarini's registration of the domain name "officdepot.com." Office Depot was unable to collect on the judgment and eventually assigned the judgment to DSH.

DSH sought to levy upon some of the other domain names owned by Zuccarini. DSH registered the judgment in the district court for the Northern District of California. DSH then obtained a preservation order from the district court and engaged in discovery. It learned that Zuccarini owned more than 248 domain names registered with VeriSign, of which more than 190 were ".com" domain names. DSH targeted the ".com" domain names in its levy.

Some background information on the structure of the domain name system will be helpful to the reader:

> Every computer connected to the Internet has a unique Internet Protocol ("IP") address. IP addresses are long strings of numbers, such as 64.233.161.147. The Internet [domain name system] provides an alphanumeric shorthand for IP addresses. The hierarchy of each domain name is divided by periods. Thus, reading a domain name from right to left, the portion of the domain name to the right of the first period is the top-level domain ("TLD"). TLDs include .com, .gov, .net., and .biz. Each TLD is divided into second-level domains identified by the designation to the left of the first period, such as "example" in "example.com" or "example.net." . . . Each domain name is unique and thus can only be registered to one entity . . . .
>
> A domain name is created when it is registered with the appropriate registry operator. A registry

> operator maintains the definitive database, or registry, that associates the registered domain names with the proper IP numbers for the respective domain name servers. The domain name servers direct Internet queries to the related web resources. A registrant can register a domain name only through companies that serve as registrars for second level domain names. Registrars accept registrations for new or expiring domain names, connect to the appropriate registry operator's TLD servers to determine whether the name is available, and register available domain names on behalf of registrants . . . .
>
> The majority of domain name registrations for commercial purposes utilize the .com TLD.

*Coalition for ICANN Transparency, Inc. v. VeriSign, Inc.*, 464 F. Supp. 2d 948, 951-53 (N.D. Cal. 2006), *reversed by* 567 F.3d 1084 (9th Cir. 2009).

As explained in *Coalition for ICANN Transparency*, there are three primary actors in the domain name system. First, companies called "registries" operate a database (or "registry") for all domain names within the scope of their authority. Second, companies called "registrars" register domain names with registries on behalf of those who own the names. Registrars maintain an ownership record for each domain name they have registered with a registry. Action by a registrar is needed to transfer ownership of a domain name from one registrant to another. Third, individuals and companies called "registrants" own the domain names. Registrants interact with the registrars, who in turn interact with the registries.

VeriSign is the registry for the domain names ".com" and ".net". *Id.* at 953. Its headquarters are located in Mountain View, California, in the Northern District of California. During discovery, DSH learned that the registrars for Zuccarini's ".com" and ".net" domain names were located in the United

States, Germany, and Israel. DSH filed a request in the district court for a turnover order to compel the registrars of certain ".com" domain names owned by Zuccarini to transfer ownership to DSH. The district court denied the request, holding that, under California Civil Procedure Code § 699.040, it could not order third parties to turn over property. DSH then moved for the appointment of a receiver who would obtain and sell the ".com" domain names in question and would use the proceeds to satisfy the judgment. The district court granted the motion to appoint a receiver.

Zuccarini appealed. We have jurisdiction under 28 U.S.C. § 1292(a)(2) to entertain an appeal from an interlocutory order appointing a receiver.

## II.  Standard of Review

We review for abuse of discretion a district court order appointing a receiver. *Canada Life Assurance Co. v. LaPeter*, 563 F.3d 837, 844 (9th Cir. 2009). We review de novo a district court's interpretation of law, including state law. *Capital Dev. Co. v. Port of Astoria*, 109 F.3d 516, 518 (9th Cir. 1997).

## III.  Discussion

DSH does not argue that the district court in the Northern District of California has *in personam* jurisdiction over Zuccarini. Rather, it argues that the court has jurisdiction over Zuccarini's intangible property that is located, for purposes of attachment, in the Northern District.

**[1]** The type of jurisdiction at issue is "type two *quasi in rem*." *See* Restatement (First) of Judgments § 32 (1942). Type two *quasi in rem* jurisdiction is used to establish the ownership of property in a dispute unrelated to the property. Type two *quasi-in rem* jurisdiction is sometimes called "attachment jurisdiction." *See* Restatement (Second) of Judgments § 8 (1982). So far as the record in this case shows, the domain

names upon which DSH seeks to levy were not involved in the underlying litigation that led to the judgment against Zuccarini.

**[2]** A district court can obtain *quasi in rem* jurisdiction over property situated within its geographical borders. *See Pennington v. Fourth Nat'l Bank*, 243 U.S. 269, 272 (1917); Fed. R. Civ. P. 4(n)(2) ("[T]he court may assert jurisdiction over the defendant's assets found in the district. Jurisdiction is acquired by seizing the assets under the circumstances and in the manner provided by state law in that district."). Though "the situs of intangibles is often a matter of controversy," *Hanson v. Denckla*, 357 U.S. 235, 246-47 (1958), *quasi in rem* jurisdiction can be asserted over intangible property. *Harris v. Balk*, 198 U.S. 215 (1905). Due process requires a constitutionally sufficient relationship among the defendant, the forum, and the litigation. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). In an action to execute on a judgment, due process concerns are satisfied, assuming proper notice, by the previous rendering of a judgment by a court of competent jurisdiction. *Id.* at 210 n.36 ("Once it has been determined by a court of competent jurisdiction that the defendant is a debtor of the plaintiff, there would seem to be no unfairness in allowing an action to realize on that debt in a State where the defendant has property, whether or not that State would have jurisdiction to determine the existence of the debt as an original matter."); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1127 (9th Cir. 2002) (quoting *Shaffer*).

We have previously noted that "[s]tate law has been applied under Rule 69(a) to garnishment, mandamus, arrest, contempt of a party, and appointment of receivers," when such actions are undertaken in aid of executing on a judgment. *In re Merrill Lynch Relocation Mgmt., Inc.*, 812 F.2d 1116, 1120 (9th Cir. 1987); *see also Edmonston v. Sisk*, 156 F.2d 300, 301 (10th Cir. 1946) (applying Rule 69(a), and state law, to appointment of receiver in aid of an action for execu-

tion); 12 Wright & Miller, Federal Practice and Procedure § 3012 at 148-49. We now take the opportunity to explain why this is so.

**[3]** Federal Rule of Civil Procedure 69 governs procedures on execution of a judgment and, for the most part, directs the district court to look to state rules. The version of Rule 69(a) relied upon by the district court provided as follows:

> Process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought, except that any statute of the United States governs to the extent that it is applicable. . . .[1]

To paraphrase, Rule 69 provides that state law applies generally, but a federal statute governs to the extent it applies.

**[4]** Rule 66 governs the appointment of a receiver in federal court. It provides:

> These rules govern an action in which the appoint-

---

[1]The rule was amended as of December 1, 2008. The updated text of the rule is as follows:

> A money judgment is enforced by a writ of execution, unless the court directs otherwise. The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution— must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies.

Fed. R. Civ. P. 69(a)(1) (2009). The advisory committee notes indicate that these amendments were merely stylistic. Advisory Committee Note (2007).

ment of a receiver is sought or a receiver sues or is sued. But the practice in administering an estate by a receiver or a similar court-appointed officer must accord with the historical practice in federal courts or with a local rule. An action in which a receiver has been appointed may be dismissed only by court order.

The federal rules, including Rule 66, qualify as federal statutes under Rule 69(a). *Bair v. Bank of Am. Nat'l Trust & Sav. Ass'n*, 112 F.2d 247, 249-50 (9th Cir. 1940) (applying federal rule to Rule 69 action); *see also Schneider v. Nat'l R.R. Passenger Corp.*, 72 F.3d 17, 19 (2d Cir. 1995) ("This term includes the Federal Rules of Civil Procedure, since they have the force and effect of federal statutes."); *Okla. Radio Assoc. v. FDIC*, 969 F.2d 940, 942 (10th Cir. 1992). Therefore, Rule 66 prevails over any state law to the extent it applies. However, Rule 66 does not provide a rule governing the proper location for appointment of a receiver in aid of execution of a judgment. Because Rule 66 does not provide a governing rule, we look to state law.

California Civil Procedure Code § 695.010(a) provides, "Except as otherwise provided by law, all property of the judgment debtor is subject to enforcement of a money judgment." Section 699.710 provides, *inter alia*, "[A]ll property that is subject to enforcement of a money judgment . . . is subject to levy under a writ of execution to satisfy a money judgment." Under these provisions, all property of a judgment debtor can be used to satisfy a writ of execution.

California Civil Procedure Code § 708.620 governs the appointment of a receiver in aid of the execution of a judgment in California state courts. It provides:

> The court may appoint a receiver to enforce the judgment where the judgment creditor shows that, considering the interests of both the judgment credi-

tor and the judgment debtor, the appointment of a receiver is a reasonable method to obtain the fair and orderly satisfaction of the judgment.

This rule does not indicate where a receiver over property should be appointed. However, § 699.510(a) provides that the appropriate place to direct a writ of execution is the county where the levy is to be made:

[A]fter entry of a money judgment, a writ of execution shall be issued by the clerk of the court upon application of the judgment creditor and shall be directed to the levying officer in the county where the levy is to be made and to any registered process server.

[5] The combined effect of these provisions is to provide that if the domain names are property subject to execution, and if they are located in the Northern District of California, that district is an appropriate location to execute judgment on them through the appointment of a receiver. There are thus two questions before us. First, are domain names property that is subject to execution? Second, if so, where are the domain names located for purposes of execution? We address these questions in turn.

[6] First, we have already held that domain names are intangible property under California law. *Kremen v. Cohen*, 337 F.3d 1024, 1030 (9th Cir. 2003). In *Palacio Del Mar Homeowners Ass'n, Inc. v. McMahon*, 174 Cal. App. 4th 1386, 1391 (2009), a California Court of Appeal held that domain names do not constitute property subject to a turnover order because they cannot be taken into custody. The court in *Palacio Del Mar* based its holding on a reading of California Civil Procedure Code § 699.040, which provides that, with respect to a turnover order, property must "be levied upon by taking it into custody." However, the court left open the question whether domain names constitute intangible property

generally, and it cited *Kremen* with approval. Moreover, the "taking it into custody" language in § 699.040 does not appear in § 708.620, which governs the appointment of receivers. We conclude that *Kremen* is still an accurate statement of California law, and that domain names are intangible property subject to a writ of execution.

Second, we note that "attaching a situs to intangible property is necessarily a legal fiction; therefore, the selection of a situs for intangibles must be context-specific, embodying a 'common sense appraisal of the requirements of justice and convenience in particular conditions.' " *Af-Cap Inc. v. Republic of Congo*, 383 F.3d 361, 371 (5th Cir. 2004) (quoting *U.S. Indus., Inc. v. Gregg*, 540 F.2d 142, 151 n.5 (3rd Cir. 1976)). That is, the location of intangible property varies depending on the purpose to be served:

> The situs may be in one place for ad valorem tax purposes; it may be in another place for venue purposes, i.e., garnishment; it may be in more than one place for tax purposes in certain circumstances; it may be in still a different place when the need for establishing its true situs is to determine whether an overriding national concern, like the application of the Act of State Doctrine is involved.

*Tabacalera Severiano Jorge, S. A. v. Standard Cigar Co.*, 392 F.2d 706, 714-15 (5th Cir. 1968) (citations omitted). A single piece of intangible property may be located in multiple places for some purposes. *Curry v. McCanless*, 307 U.S. 357, 367-68 (1939).

**[7]** California law says nothing specific about the location of domain names. However, in the Anticybersquatting Consumer Protection Act Congress has addressed the question. Under the ACPA, a trademark owner in a civil cybersquatting action can proceed *in personam* against the cybersquatter. If there is no *in personam* jurisdiction in any judicial district of

the United States, the owner may proceed *in rem* against the allegedly infringing domain name. 15 U.S.C. § 1125(d)(2)(A)(ii)(I). The ACPA provides that *in rem* jurisdiction over these domain names shall be "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located . . . ." 15 U.S.C. § 1125(d)(2)(A). The ACPA also provides for the legal situs of the domain name once a lawsuit has been filed:

> In an in rem action under this paragraph, a domain name shall be deemed to have its situs in the judicial district in which . . . the domain name registrar, registry, or other domain name authority that registered or assigned the domain name is located . . . .

*Id.* § 1125(d)(2)(C)(i); *see also Mattel, Inc. v. Barbie-Club.com*, 310 F.3d 293, 302 (2d Cir. 2002) (interpreting these provisions). Although the current proceeding is not an action under the ACPA, the statute is authority for the proposition that domain names are personal property located wherever the registry or the registrar are located.

Both parties make practical arguments relevant to an appraisal of the interests of "justice and convenience." *Af-Cap Inc.*, 383 F.3d at 371. Zuccarini argues that since registrars tell the registries who owns domain names, any attachment should be directed to registrars. Zuccarini also argues that if the domain names under VeriSign's control are located in the district where VeriSign has its headquarters, every ".net" and ".com" domain name is located in that district.

DSH admits that instructions concerning the transfer of ownership of domain names must go through registrars. But it points out that the registrars are essentially intermediaries, that the registry controls the database of all domain names, and that any change in ownership is ultimately reflected in the registry. Additionally, DSH points out that it would greatly

impede the ability of judgment creditors to levy upon domain names if they were required to bring suits in the many different places where registrars of the domain names are located.

**[8]** Given the persuasive but not controlling language of the ACPA, and the practicalities involved in bringing suit to execute judgments against owners of domain names, we conclude under California law that domain names are located where the registry is located for the purpose of asserting *quasi in rem* jurisdiction. Although the question is not directly before us, we add that we see no reason why for that purpose domain names are not also located where the relevant registrar is located.

## Conclusion

**[9]** Because VeriSign has its headquarters in the Northern District of California, the district court had *quasi in rem* jurisdiction over the domain names registered with VeriSign for purposes of appointing a receiver to assist in executing a judgment against the owner of the names.

**AFFIRMED.**