John Zuccarini
190 SW Kanner Highway
Stuart, Florida 34997
(772) 631-3887

Pro Se Defendant

# UNITED STATES DISTRICT COURT

# NOTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| OFFICE DEPOT INC., a Delaware Corporation ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> JOHN ZUCCARINI, individually and ) <br> d.b.a. COUNTRY WALK; and DOES 1 ) <br> through 10, inclusive, ) <br> ) <br> Defendants. ) <br> _____ ) <br> ) <br> DS HOLDINGS, LLC a Colorado limited ) <br> liability company, ) <br> ) <br> Assignee, ) <br> ) <br> vs. ) <br> ) <br> JOHN ZUCCARINI, individually and ) <br> d.b.a. COUNTRY WALK; and DOES 1 ) <br> through 10, inclusive, ) <br> ) <br> Defendants. ) <br> _____ ) | Case No. C-06-80356-SI <br><br> EMERGENCY EX PARTE APPLICATON FOR A TEMPORARY RESTRAINING ORDER / PRELIMINARY INJUNCTION <br><br> IMMEDIATE HEARING REQUESTED <br><br><br><br> PLACE:   Courtroom 10, 19th Floor <br> The Honorable Susan Illston |

## DEFENDANT'S EX PARTE APPLICATION FOR EMERGENCY TEMPORARY RESTRAINING ORDER/PRELIMINARY INJUNCTION

COMES NOW, Defendant John Zuccarini who moves this Court pursuant to Federal Rules of Civil Procedure Rule 65(a) and (b) for an Emergency Order granting a Temporary Restraining Order/Preliminary Injunction in order to preserve the status quo.

In support of this Petition, Defendant states the following:

On May 25, 2010 Defendant found that the receiver, Michael Blacksburg did not capably perform the task bestowed upon him by this Court. During the month of May 2010, thirteen (13) domain names previously in the possession of the receiver were prematurely placed in auction and are now in the ownership of new entities due to the fact the registrations of the domain names were not renewed by the receiver.

The domain names in not being renewed, went to auction without the receiver's knowledge or consent. The registrar of the domain names Network Solutions Inc., (NSI) has in place an automated process by which non renewed domain names are placed in auction after an approximate period of one month passes after a domain names renewal date in which no action is taken to renew the domain name.

In addition, it appears the receiver for the duration of his receivership did not adequately notify or request the domain name registrars, such NSI of the Courts actions, by which the registrars could have placed a legal hold on the domain names that would have prevented their loss even if the registrations were not renewed.

Because of the premature auctioning of the domain names, only 20 percent of the auctioned prices can be acquired by the receiver, though even that is not guaranteed as it is

contingent on the receiver following certain protocol as required by the domain name registrar NSI. An article on the Internet describes the auction of seven of the thirteen lost domain names. "After 7 Hours of Bidding, GovermentGrants.com Sells For $53K On NameJet (Yes It's a Typo)"[1] *"Exhibit A"* shows that this one domain name, govermentgrants.com sold at auction for Fifty-three thousand dollars ($53,000.00). The article shows that on that one day, Domain Names taken from the Defendant sold for Sixty-five Thousand Dollars ($65,000.00).Had the receiver been properly managing what he had been entrusted, a large portion of the debt that Defendant's Domain names were taken to satisfy, would have been eliminated.

Defendant Moves this Court to Grant TRO/Injunction to prevent further sales of the Domain Names at such a great loss.

Further, The United States of America has filed a motion to intervene in the case as an additional defendant. 05/28/2010 [Doc.17] Stipulation To Add Party And [proposed] Order Thereon by United States of America.

For this reason, the Defendant Moves this Honorable Court for an Order Granting a Temporary Restraining Order/Preliminary Injunction to restrain DS Holdings and the receiver from selling the domain names until the United States can be added and heard in this case.

Four factors govern the Court's decision whether to issue a preliminary injunction:

> 1) whether the movant has shown a reasonable probability of success on the merits;
> 2) whether the movant will be irreparably injured by the denial of the relief;
> 3) whether granting the preliminary relief will result in greater harm to the non-moving party (i.e., balancing of the hardships);
> 4) whether granting the preliminary relief will be in the public interest.

---

[1] "After 7 Hours of Bidding, GovermentGrants.com Sells For $53K On NameJet (Yes It's a Typo)"  http://www.thedomains.com/2010/05/25/after-5-hours-govermentgrants-com-sells-for-53k-on-namejet-yes-its-a-typo/

It is without question that the grounds necessary for this Court to Grant Defendant's Application, have been met.

## ARGUMENT AND CITATION OF AUTHORITY

The very purpose of a preliminary injunction, is to preserve the status quo and the rights of the parties until a final judgment issues in the cause. See ***Univ. of Tex. v. Camenisch***, 451 U.S. 390, 395 (1981) ("The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held."); ***Sierra On-Line, Inc. v. Phoenix Software, Inc***., 739 F.2d 1415, 1422 (9th Cir. 1984) ("A preliminary injunction . . . is not a preliminary adjudication on the merits but rather a device for preserving the status quo and preventing the irreparable loss of rights before judgment.").

Because of the past Judgment in the Third Circuit by the Federal Trade Commission (FTC) in 2:01-cv-04854-BMS a suit involving FTC and Defendant, and fees owed not only to the Plaintiff, but to the IRS as well. The Preliminary Injunction/TRO should be granted until all parties, including The United States, can be heard on the matter.

Further, this Court previously held :

> "The court is concerned, however, with DS Holdings' ultimate plan to auction off the domain names at issue. As Zuccarini points out, many of the domain names at issue are deliberate misspellings and variations of legitimate domain names, both generic and proprietary. Such names may have legitimate purposes, as counsel argued at the hearing, but they may also be used to misdirect consumers, as apparently Zuccarini himself did."

Further, the auction of the domain names has the probability of being used in the nature of cybersquatting. In essence, this Court is promoting cybersquatting, which the Federal Trade Commission found Defendant guilty of. It would only be fair to see what The United States can contribute to the case.

Furthermore, the California Court of Appeals, has in fact actually held that you cannot levy upon domain names. The door was not "left open" as the 9th Circuit claims, the door was closed when The California Court of Appeals held that domain names are intangible, they cannot be taken into custody.

> ***Intangible property.*** Property that lacks a physical existence - Examples include bank account, stock options, and business goodwill. Cf. *Tangible property.*[2]

Domain names are "intangible property under California law". **Kremen v. Cohen**, 337 F.3d 1024, 1030 (9th Cir. 2003). In **Palacio Del Mar Homeowners Ass'n, Inc. v. McMahon**, 174 Cal. App. 4th 1386, 1391 (2009), a California Court of Appeals held that domain names do not constitute property subject to a turnover order because they cannot be taken into custody.

Further, even had the California Appellate Courts not so held, the Federal Courts would have been obligated to Certify the question to California's Supreme Court. "Effective Jan. 1, 1998, California Rule of Court 29.5 created a process whereby sister state courts of last resort and federal appellate courts could certify unresolved questions of California law to the California Supreme Court."[3]

## **CONCLUSION**

Defendant has shown this Court that, under the circumstances, it is necessary to Petition the Court for TRO/Injunction. Not only has there been a misinterpretation of California state law and that the auctioning of the domain names can promote violations of the ACPA; but the receiver has not properly preserved the worth of said Domain Names. In addition the United States has filed a motion to intervene in the case and should be heard before any further actions

---

[2] Black's Law Dictionary, 7th Ed. page 1233.

[3] Originally published in the June 7, 2000 issue of the Los Angeles Daily Journal.

are taken relevant to the auctioning of the domain names.

Defendant Moves this Honorable Court to Grant the Temporary Restraining Order/Preliminary Injunction to give consideration to the arguments in his foregoing brief, Rule 60 (b) Relief from Judgment, which is scheduled for July 16, 2010.

Respectfully submitted this 1st day of June, 2010

By: _____
        John Zuccarini

Pro Se Defendant

**EXHIBIT A**

http://www.thedomains.com/2010/05/25/after-5-hours-govermentgrants-com-sells-for-53k-on-namejet-yes-its-a-typo/

After 7 Hours of Bidding, GovermentGrants.com Sells For $53K On NameJet
(Yes It's a Typo)
2010 May 25

by MHBAfter

7 hours of extended bidding on NameJet.com, the auction for the domain name GovermentGrants.com finally ended with a sales price of $53,022.

Yes its a typo.

The correctly spelled domain, governmentgrants.com has some nice traffic, with compete.com showing over 30K monthly visitors and Alexa gives it a rank of 555K.

The ownership of GovernmentGrants.com is under Moniker privacy.

The typo that sold today has an Alexa rank of 5.5M.

According to WordTracker.com there is about 10% of the search volume for the typo as for the correct term.

So if GovermentGrants.com sold for $53K is GovernmentGrants.com worth in excess of $500K?

Yes its kind of unfortunate to see the highest selling domain on my NameJet.com board for 2010 to be a typo.

Its also the highest domain sale on my NameJet.com board since the mid-February auction of Historia.com (sold for $40K).

A few other "Government" typo domains sold today:

USGoverment.com $4,950

GovermentGrant.com $3,950

GovermentAuction.com $2,750

GovermentAuctions.com $2,500

The correctly spelled domains of FloridaGovernment.com and CaliforniaGovernment.com also sold today for only around $2K each.

Since all of these domains appeared to drop on the same day, it looks like one domain holder just let $65K in domains just drop.

Ouch.

In a non-government domain sale today, ComputerUpgrade.com went for just $3,773 on NameJet