**KRONENBERGER BURGOYNE, LLP**
Karl S. Kronenberger (Bar No. 226112)
Henry M. Burgoyne, III (Bar No. 203748)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone: (415) 955-1155
Facsimile: (415) 955-1158
karl@KBInternetLaw.com
hank@KBInternetLaw.com
jeff@KBInternetLaw.com

Attorneys for Judgment Creditor DS HOLDINGS, LLC

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **OFFICE DEPOT, INC.,** a Delaware corporation,<br><br>Plaintiff,<br><br>vs.<br><br>**JOHN ZUCCARINI,** individually and d.b.a. COUNTRY WALK; and DOES 1 through 10, inclusive,<br><br>Defendant.<br><br>**DS HOLDINGS, LLC,** a Colorado limited liability company,<br><br>Judgment Creditor,<br><br>vs.<br><br>**JOHN ZUCCARINI,** individually and d.b.a. COUNTRY WALK; and DOES 1 through 10, inclusive,<br><br>Judgment Debtor. | Case No. C-06-80356-SI<br><br>**DS HOLDINGS, LLC'S EX PARTE APPLICATION FOR EMERGENCY TEMPORARY INJUNCTION FREEZING DOMAIN NAMES AND REQUEST FOR COMPLETE ACCOUNTING OF RECEIVER'S ACTIONS**<br><br>Date: In Chambers<br>Ctrm: 10, 19th Floor<br>Judge: The Hon. Susan Illston |

## INTRODUCTION

While the details remain unclear, it appears that Michael W. Blacksburg, the post-judgment receiver in this action, inadvertently allowed the registrations for fourteen domain names to lapse. Significantly, these domain names comprise part of Zuccarini's estate and, pursuant to the Court's order, are to be sold at public auction to satisfy certain of Zuccarini's obligations, including DS Holdings, LLC ("DSH")'s judgment against Zuccarini. However, after the registrations lapsed, it appears that the domain name registrar, Network Solutions, Inc. ("Network Solutions"), sold some of the domain names to third parties in violation of the Court's preservation order.

Because the Court's preservation order barred such sales, Network Solutions could not and did not transfer lawful title to these domain names. Instead, the Receiver retains lawful title to the domain names, and they should be returned to the Receiver. However, unless the Court orders the domain names to be frozen while it determines the best way by which to recover these domain names, they may be transferred out of the country and/or hidden and/or otherwise made unrecoverable.

These domain names are potentially worth in excess of $65,000, and this value could be applied to Zuccarini's obligations, including to DSH's judgment, with any excess to be returned to Zuccarini. If the Court does not freeze these domain names and order their return, both DSH and Zuccarini will be significantly harmed.

## BACKGROUND

On December 18, 2006, DSH registered in this Court a judgment issued against Zuccarini by the United States District Court for the Central District of California (the "Judgment"). In connection with DSH's efforts to enforce the Judgment, the Court issued a preservation and discovery order (the "Preservation Order") on February 21, 2007. [D.E. No. 9.] Among other things, the Preservation Order stated:

> Beginning as of the date this Order is entered and continuing until such time as this order is modified, superseded or vacated, neither John Zuccarini, Network Solutions, Joker.com nor any other party with actual or constructive knowledge of this Order, nor any person or entity owned or controlled by any such party, shall transfer, cause to be

Case No. C-06-80356-SI   1   **DS HOLDINGS' EX PARTE APPLICATION FOR EMERGENCY INJ. FREEZING DOMAINS**

transferred, or otherwise permit, participate in or facilitate the transfer of any domain name comprising the Domain Name Holdings.

Subsequently, DSH applied for the appointment of a post-judgment receiver to collect and ultimately dispose of Zuccarini's domain name holdings, with the proceeds going toward the enforcement of the Judgment. [D.E. No. 18.] The Court granted DSH's request and appointed Michael W. Blacksburg as a receiver (the "Receiver") [D.E. No. 30], and on November 14, 2007, the Court issued an Order Granting Receiver's Request to Lift Preservation Order, which stated:

> In order to transfer control of the Domain Names from Zuccarini to the post-judgment receiver, the Preservation Order is hereby lifted for the sole purpose of transferring control of the Domain Names to Michael W. Blacksburg, as the post-judgment receiver for this matter. [D.E. No. 48.]

In addition to DSH's Judgment against Zuccarini, the Internal Revenue Service ("IRS") has tax liens against Zuccarini. Thus, DSH has been working with the U.S. Attorney to satisfy Zuccarini's various obligations to his creditors' satisfaction. Thus, in May 2010 the parties stipulated to permit the United States to intervene as a party on behalf of the IRS. DSH continues to work with the U.S. Attorney to address the various issues in this action.

On May 25, 2010, before any of the domains had been auctioned off by the Receiver to satisfy the Judgment, Zuccarini notified the parties and the Receiver that seven of the domains had been sold or otherwise transferred in violation of the Court's preservation order. (Declaration of Henry M. Burgoyne, III, in Support of DS Holdings, LLC's Ex Parte Application For Emergency Temporary Injunction Freezing Domain Names And Request For Complete Accounting Of Receiver's Actions ("Burgoyne Decl.") ¶2 & Ex. A). Additionally, on May 25 and June 2, Zuccarini notified the parties and Receiver that several additional domains had also been sold or otherwise transferred. (*Id.* ¶¶3-4 & Exs. B-C). In particular, Zuccarini said that the following names had been sold by Network Solutions through its auction service NameJet.com:

- govermentgrants.com

- usgoverment.com
- govermentgrant.com
- govermentauction.com
- govermentauctions.com
- floridagovernment.com
- californiagovernment.com
- britian.com
- greatbritian.com
- dictionarys.com
- perscriptiondrugs.com
- wresteling.com
- wrestleing.com
- emailadresses.com (collectively, the "Domains")  (*Id.* Exs. A-C.)

On further inquiry, it appeared that the registrations for the Domains were inadvertently allowed to lapse, and that Network Solutions—the domain name registrar for the Domains—took control of the Domains and sold them to third parties.  (Burgoyne Decl. ¶5.)

**STANDARD FOR PRELIMINARY OR TEMPORARY INJUNCTION**

The purpose of a temporary injunction is to preserve the status quo pending the determination of the action on the merits.  *See Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1023 (9th Cir. 2009).  The party seeking a temporary injunction must demonstrate either: 1) a likelihood of success on the merits and the possibility of irreparable injury; or 2) serious questions going to the merits and the balance of hardships strongly favoring the moving party.[1]  *See Paramount Land Co. v. California Pistachio Comm'n*, 491 F.3d 1003, 1008 (9th Cir. 2007).  Where a party seeks to use a temporary injunction to freeze assets, the moving party must show a likelihood of dissipation of the claimed assets or another inability to recover monetary damages if the relief is not granted.  *See Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009).

//

---

[1] As an alternative test for a temporary injunction, the Ninth Circuit has required a plaintiff to show: (1) it is likely to succeed on the merits; (2) it is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in the plaintiff's favor; and (4) an injunction is in the public interest.  *See Raich v. Gonzales*, 500 F.3d 850, 857-58 (9th Cir. 2007).

KRONENBERGER BURGOYNE, LLP
150 Post Street, Suite 520
San Francisco, CA 94108
www.KBInternetLaw.com

**ARGUMENT**

DSH requests that the Court issue an emergency order preventing any additional transfer or sale of the Domains until an appropriate procedure can be fashioned to recover the Domains. Additionally, DSH requests that the Court amend its Order Denying Defendant's Motion to Stay Auction of Domain Names and Granting Defendant's Motion to Order Receiver to Provide Monthly Revenue Reports (the "Revenue Report Order") to require the Receiver to provide a detailed accounting of his actions related to this action, including: a) an accounting of the time spent on this action; b) an accounting of the Receiver's income and expenses; and c) an accounting of the status of the domain names, including the registrant, contact information, registrar, expiration date, and sold date as are applicable.

**A.   The Court should enjoin the sale or transfer of the Domains pending investigation of the lapsed registrations.**

It is essential that the Court allow the Receiver to recover the Domains so that that they can be sold at public auction as previously ordered by the Court. If the Court does not freeze the Domains, they may be transferred out of the country and/or hidden and/or otherwise made unrecoverable.

The Court specifically ordered any third party with actual or constructive knowledge of the Court's order not to transfer the Domains. Moreover, the Court specifically identified Network Solutions in its Preservation Order and required Network Solutions not to transfer the Domains. When the Court modified its Preservation Order, it did so for the extremely limited purpose of allowing the Domains to be transferred to the Receiver for sale by public auction. While the details remain unclear regarding the disposition of the Domains, it is evident that the disposition occurred in violation of the Court's Preservation Order.

The Court has the power to freeze the Domains and provide for their recovery. Upon imposition of receivership, all property in possession of the debtor passes into the custody of the receivership court and becomes subject to the court's authority and

control. Thus, in exercise of jurisdiction over the debtor's property, a court has the power to issue injunctions and all other writs necessary to protect the estate from interference and to ensure its orderly administration. *See Federal Trade Comm'n v. Productive Marketing, Inc.*, 136 F. Supp. 2d 1096, 1105 (C.D. Cal. 2001); *see also Sec. & Exch. Comm'n v. United Fin. Group, Inc.*, 576 F.2d 217, 221 (9th Cir. 1978) (court has broad equitable powers to prevent interference with administration of receivership, including using injunction to prevent transactions involving receivership property). Moreover, a receiver may proceed summarily to recover property belonging to the receivership by petition to the appointing court for an order to show cause against possessor, even though the possessor is not a party to the original action. *See United States v. Arizona Fuels Corp.*, 739 F.2d 455, 458 (9th Cir. 1984)

Here, there is no question that the transfer of the Domains was improper, and that no third party has acquired lawful title to the Domains. As Judge Alsup held, a purchaser cannot acquire lawful title to a domain name from a person who had no title to sell it. *See Express Media Group, LLC v. Express Corp.*, No. 06-3504, 2007 WL 1394163, *5 (N.D. Cal. May 10, 2007). An involuntary transfer of a domain name results in void title. *Id.* Thus, even a good faith purchaser cannot acquire lawful title to a domain name where the seller had no title to sell. *See id; see also CRS Recover, Inc. v. Laxton*, 600 F.3d 1138, 1145 (9th Cir. 2010) (finding that domain names are property subject to conversion and that an involuntary transfer of a domain name voids title to that domain).

Moreover, Network Solutions was aware that the Receiver did not have the right to let the registrations of the Domains lapse or to otherwise dispose of the Domains, except at public auction to satisfy the Judgment. *See Local Joint Executive Bd. AFL-CIO v. Hotel Circle, Inc.*, 613 F.2d 210, 215 (9th Cir. 1980) (parties dealing with receiver are charged with knowledge of the extent of any restrictions on the receiver's authority).

The only person with any title to the Domains or any authority to sell the Domains was the Receiver. *See In re Global Grounds Greenery, LLC*, 405 B.R. 659, 666 (Bankr.

D. Az. 2009) (receiver takes control and possession of property of debtor). Neither Network Solutions, Inc., nor any other person or entity had any title to the Domains or any authority to sell or transfer them. In fact, the Court expressly ordered Network Solutions not to transfer the Domains, except for the "sole purpose of transferring control of the Domain Names to the" Receiver. Thus, under the terms of the Preservation Order, Network Solutions had no lawful title to the Domains and no authority to "transfer, cause to be transferred, or otherwise permit, participate in or facilitate the transfer of the" Domains.

Both DSH and Zuccarini will be harmed if the Court does not freeze the Domains. The Domains are worth in excess of $65,000. A failure to immediately freeze the Domains may result in them being transferred to another country or hidden or otherwise made unrecoverable. Thus, in the interests of all parties, the Court should grant this emergency request and freeze the Domains.

**B. The Court should amend its Revenue Report Order to require the Receiver to provide a full accounting of his activities and a status report for the domains.**

At this time, DSH is investigating the inadvertent sale of the Domains. DSH had nothing to do with the sale of the Domains and is eager to understand how and why the sale occurred. The Domains comprise a valuable part of Zuccarini's estate, and DSH's interest in that estate will be impaired if the Domains cannot be recovered. Given this unusual posture, DSH asks the Court to order the Receiver to provide a full accounting of his activities related to this action, including a) an accounting of the time spent on this action; b) an accounting of the Receiver's income and expenses; and c) an accounting the status of the domain names, including the registrant, contact information, registrar, expiration date, and sold date as are applicable. Such an accounting is necessary for the parties and the Court to understand the status of Zuccarini's estate in the possession of the Receiver and to know what, if anything, has been improperly dissipated.

**CONCLUSION**

For all of the reasons set forth above, the Court should freeze the Domains and set forth procedures on how to effect the return of the Domains to the Receiver.

DATED: June 3, 2010                                     KRONENBERGER BURGOYNE, LLP

                                                        By:   s/ Henry M. Burgoyne, III
                                                              Henry M. Burgoyne, III

                                                        Attorney for Judgment Creditor, DS HOLDINGS LLC