**KRONENBERGER BURGOYNE, LLP**
Karl S. Kronenberger (Bar No. 226112)
Henry M. Burgoyne III (Bar No. 203748)
Jeffrey M. Rosenfeld (Bar No. 222187)
150 Post Street, Suite 520
San Francisco, CA 94108
Telephone:  (415) 955-1155
Facsimile:   (415) 955-1158
karl@KBInternetLaw.com
hank@KBInternetLaw.com
jeff@KBInternetLaw.com

Attorneys for Judgment Creditor DS HOLDINGS, LLC

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **OFFICE DEPOT, INC.,** a Delaware corporation,<br><br>              Plaintiff,<br><br>vs.<br><br>**JOHN ZUCCARINI,** individually and d.b.a. COUNTRY WALK; and DOES 1 through 10, inclusive,<br><br>              Defendant. | Case No. C-06-80356-SI<br><br>**JUDGMENT CREDITOR DS HOLDINGS, LLC'S APPLICATION FOR FINDING OF CONTEMPT AGAINST JUDGMENT DEBTOR JOHN ZUCCARINI**<br><br>DATE:    September 10, 2010<br>TIME:    9:00 a.m.<br>CTRM:   10, 19th Floor<br><br>The Honorable Susan Illston |
| **DS HOLDINGS, LLC,** a Colorado limited liability company,<br><br>              Judgment Creditor,<br><br>vs.<br><br>**JOHN ZUCCARINI,** individually and d.b.a. COUNTRY WALK; and DOES 1 through 10, inclusive,<br><br>              Judgment Debtor. | |

**INTRODUCTION**

Nearly two years ago, the Court appointed Michael Blacksburg as the post-judgment receiver in this action (the "Receiver"). The Court tasked the Receiver with marshaling Judgment Debtor John Zuccarini's domain holdings (the "Domain Holdings") and selling the Domain Holdings at auction to satisfy Zuccarini's obligations. Since that time, the Court, the Receiver, and all the parties have understood that the Receiver would research the most effective way to sell the Domain Holdings and propose the same for the Court's approval. Thus, the Court recently said that the Receiver and parties were free to submit to the Court a procedure for this auction.

Judgment Creditor DS Holdings, LLC ("DS Holdings"), Creditor and Intervenor the United States of America ("U.S."), and the Receiver have all worked with each other to select an appropriate auction for the Domain Holdings. Zuccarini did just the opposite. Not only did Zuccarini refuse to work with the Receiver or the parties, he has sought to obstruct the auction process. Specifically, Zuccarini contacted the selected auction house and hosting conference and threatened them with litigation if they participated in the auction of the Domain Holdings. With these tactics, Zuccarini has achieved his goal: he has threatened to derail the auction process, despite the Court's orders stating that the Domain Holdings are to be auctioned. The Court should find Zuccarini in contempt of Court for his violations of the Court's orders.

**BACKGROUND**

Since the Court appointed the Receiver in September 2007 the parties and the Court have envisioned the Receiver selling the Domain Holdings at auction to satisfy Zuccarini's obligations. Thus, on June 15, 2010 the Court issued an order denying Zuccarini's motion for emergency relief and Network Solutions, LLC's motion to intervene. [D.E. No. 119.] In this order, the Court said, "[t]he receiver and the parties are free to agree on a procedure for auction of the approximately 116 domain names that remain in the receiver's control, subject to the Court's approval."

Case No. C-06-80356-SI  1  **DS HOLDINGS'S APPLICATION FOR CONTEMPT AGAINST ZUCCARINI**

Following the entry of this order, the Receiver contacted auction houses to discuss the possibility of selling the Domain Holdings. The Receiver selected the auction occurring at the T.R.A.F.F.I.C. Domain Conference & Expo, in Miami, Florida, on October 19, 2010, to be held in conjunction with Latona's Brokerage & Auction House (the "Auction") as the most effective way to maximize the proceeds from the Domain Name Holdings. And on July 30, 2010 DS Holdings, the U.S., and the Receiver submitted a motion asking the Court to approve the sale of the Domain Holdings at the Auction (the "Auction Motion").

Zuccarini opposed the Auction Motion. Additionally, Zuccarini contacted the proprietors of both the T.R.A.F.F.I.C. Domain Conference & Expo and Latona's Brokerage & Auction House and threatened them with legal action if they worked with the Receiver. Specifically Zuccarini wrote:

> I am writing this letter to the stated parties, as I believe the parties may not be fully aware of all the circumstances concerning the related domain names and the current Federal litigation involving these domain names.
>
> It has come to my attention, that although there are two separate on-going legal disputes in the Federal Court system concerning my ownership of Domain Names, that Rick Latona through Latona's LLC, in consent and cooperation with Targeted Traffic Inc., represented by Howard Neu, and in consent and cooperation with Rick Schwartz, and organizer of T.R.A.F.F.I.C. Domain Conference and Expos, is considering entering into an agreement to conduct an auction of particular Domain Names involved in these on-going Federal litigations.
>
> These cases currently before the Federal Courts related to the Domain Names of the proposed auction are, DS Holdings LLC vs. Zuccarini (C-06-80356-SI) being heard in the Northern District of California and currently on appeal to the 9th Circuit Court of Appeals (10-16383), in addition to, Zuccarini vs. Namejet LLC, Network Solutions LLC, VeriSign Inc., Enom Inc., (2:10-CV-14178-KMM) being heard in the Southern District of Florida.
>
> In addition, there is also currently before the 9th Circuit Court of Appeals a motion to stay the auction of all the Domain Names till the Court issues a ruling on the appeal (10-16383), before them.
>
> The suit filed against NameJet, NSI, VeriSign and Enom as defendants, is based on the illegal/wrongful conversion of John Zuccarini's Domain Names by defendants.

| Case No. C-06-80356-SI | 2 | DS HOLDINGS'S APPLICATION FOR CONTEMPT AGAINST ZUCCARINI |

> Although the crime of conversion, and conspiracy in connection with the Domain Names, which includes the auctioning of fourteen Domain Names during the month of May 2010 has bee brought up ni both Courts, it appears there are entities still considering to, in my view, illegally/wrongfully auction the remaining number of Domain Names.
>
> For those who would become involved in further attempts to auction any of these particular Domain Names, it would be necessary for me to bring those parties, either into one of the on-going actions, or into a separate lawsuit as defendants, a draft copy of which I have attached.

(Declaration of Karl S. Kronenberger in Support of DS Holdings, LLC's Application for Contempt Against Zuccarini ("Kronenberger Decl.") ¶2 & Ex. A.)

On August 4, 2010 Zuccarini sent the following email to the same recipients, specifically addressing the email to Howard Neu, one of the owners of the T.R.A.F.F.I.C. Domain Conference & Expo, who is also an attorney:

> I am writing in reference to the proposed auction at the Traffic Conference in Miami for August 19,2000, and your representation of me as my attorney in the original Office Depot case.
>
> As you are aware, as you represented me when the Office Depot case was first filed in April 2000, and while your name is not present on the Pacer web site, you had make telephone contact with the attorney of record at that time for Office Depot in hopes of coming to a settlement, although that did not work out in the end.
>
> You did as you may recall, as I checked the Pacer site today, on December 13, 2000 file an affidavit on my behave, although it was rejected by the Court, as you had forgotten to use lined numbered paper for the document. No doubt though that document is on file with the court.
>
> In consideration of these circumstances, I believe it to be extremely unethical, for you to conduct and if not illegal, also completely unethical, for you to financially benefit from any auction of the domain names for the Office Depot case. (Kronenberger Decl. ¶4 & Ex. B.)

Zuccarini's emails have had the intended results. The recipients have expressed apprehension to DS Holdings about holding the auction of the Domain Holdings, and expressed fear that if they go through with the Auction they will be haled into court by Zuccarini and incur considerable expense. (Kronenberger Decl. ¶5.)

## ARGUMENT

### A. Zuccarini has committed contempt of Court.

Civil contempt is characterized by the court's desire to compel obedience to a court order or to compensate the contemnor's adversary for injuries that resulted from

non-compliance. *Biovail Labs., Inc. v. Anchen Pharm., Inc.*, 463 F. Supp. 2d 1073, 1080 (C.D. Cal. 2006); *see Bingman v. Ward*, 100 F.3d 653, 655 (9th Cir. 1996). A party seeking a contempt sanction must establish: 1) that an opposing party has violated a federal district court's order; 2) beyond substantial compliance; 3) not based on good faith and reasonable interpretation of the order; 4) by clear and convincing evidence. *Labor/Cmty. Strategy Ctr. v. Los Angeles County Metro. Transp. Author.*, 564 F.3d 1115, 1123 (9th Cir. 2009). In a civil contempt proceeding, the Court is not required to find that the contemnor willfully or intentionally failed to comply with the Court's order, and good faith is not defense. *United States v. Rose*, 437 F. Supp. 2d 1166, 1170 (S.D. Cal. 2006).

A person who unlawfully interferes with the Court's officers and agents in full and complete possession and management of property in the Court's possession is guilty of contempt. *See In re Rubin*, 242 F. Supp. 408, 412 (E.D. Pa. 1965). Thus, an attempt to disturb the custody or possession of property in the possession of a Court-appointed receiver without leave of the Court is a contempt of Court. *See In re Cochran*, 40 F.2d 282, 285 (W.D. Wash. 1930).

Here, there is also no question that Zuccarini was aware that the Court had ordered the Receiver to develop and submit to the Court a plan by which the Domain Holdings would be sold at auction. This duty of the Receiver has appeared in multiple orders of the Court. Moreover, there is no question that Zuccarini has sought to interfere with the Receiver's auctioning of the Domain Holdings. Zuccarini expressly threatened to sue both the auctioneer and the conference hosting the auction if they participated in the sale of the Domain Holdings.

In light of these two simple facts, it is unfortunately indisputable that Zuccarini has taken affirmative efforts to flout the Court's orders and thwart the Court's administration of justice. If the Court does not impose an appropriate remedial sanction, Zuccarini will prevent the sale of the Domain Holdings.

//

**B.     The Court should impose appropriate coercive sanctions against Zuccarini.**

Unless the Court imposes appropriate remedial and prophylactic sanctions against Zuccarini, he will continue to threaten the auction process and disregard the Court's orders.

Civil contempt is characterized by the Court's desire to compel obedience with its orders.  *See United States v. Bright*, 596 F.3d 683, 695-96 (9th Cir. 2010).  Civil contempt sanctions must either compensate the complaining party for its losses resulting from the contemnor's misconduct or serve to coerce an individual into future compliance with the Court's order.  *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 517 (9th Cir. 1992).  A litigant is not entitled to continue to obstruct and delay the business of the Court after fair and clear warning of his contempt.  *See Dallas Cabana, Inc. v. Collier*, 469 F.2d 606, 610 (5th Cir. 1972).  Thus, Courts have the power to impose a conditional period of imprisonment for the purpose of coercing an individual to obey its validly entered order.  *See United States v. Rose*, 437 F. Supp. 2d 1166, 1170 (S.D. Cal. 2006). While the Court generally must impose the minimum sanction necessary to secure compliance with its orders, the Court retains discretion to fashion an appropriate remedial or coercive sanction.  *See Bright*, 596 F.3d at 696.

The Court must impose an appropriate coercive sanction against Zuccarini to prevent him from further disrupting the Auction.  Given Zuccarini's continual misconduct, DS Holdings believes that nothing short of the threat of incarceration will stop Zuccarini from his efforts to derail the Auction.  Moreover, in order to ensure that Zuccarini does not threaten the proprietors of the Auction with baseless and expensive litigation, the Court should exercise exclusive jurisdiction over any dispute that may arise out of or relate to the Auction.  These are appropriate coercive sanctions to address Zuccarini's contempt.

//

//

//

**CONCLUSION**

For all the reasons set forth above, the Court should hold Zuccarini in contempt of the Court.

DATED: August 4, 2010          KRONENBERGER BURGOYNE, LLP

By:    s/ Henry M. Burgoyne, III
       Henry M. Burgoyne, III

Attorneys for Judgment Creditor,
DS HOLDINGS, LLC