# Exhibit A

**From:** John Z [mailto:raveclub@comcast.net]
**Sent:** Monday, August 02, 2010 11:37 AM
**To:** Rick Latona
**Cc:** howard@neulaw.com; domainking@gmail.com
**Subject:** Rick Latona, Howard Neu, Rick Schwartz - Related to Proposed Auction - John Zuccarini

To Rick Latona, Howard Neu, Rick Schwartz,

I am writing this letter to the stated parties, as I believe the parties may not be fully aware of all the circumstances concerning the related domain names and the current Federal litigation involving these domain names.

It has come to my attention, that although there are two separate on-going legal disputes in the Federal Court system concerning my ownership of Domain Names, that Rick Latona through Latona's LLC, in consent and cooperation with Targeted Traffic Inc., represented by Howard Neu, and in consent and cooperation with Rick Schwartz, an organizer of T.R.A.F.F.I.C Domain Conference and Expos, is considering entering into an agreement to conduct an auction of particular Domain Names involved in these on-going Federal litigations.

The cases currently before the Federal Courts related to the Domain Names of the proposed auction are, DS Holdings LLC vs. Zuccarini (C-06-80356-SI) being heard in the Northern District of California and currently on appeal to the 9th Circuit Court of Appeals (10-16383), in addition to, Zuccarini vs. Namejet LLC, Network Solutions LLC, VeriSign Inc., Enom Inc., (2:10-CV-14178-KMM) being heard in the Southern District of Florida.

In addition, there is also currently before the 9th Circuit Court of Appeals a motion to stay the auction of all the Domain Names till the Court issues a ruling on the appeal (10-16383), before them.

The suit filed against NameJet, NSI, VeriSign and Enom as defendants, is based on the illegal/wrongful conversion of John Zuccarini's Domain Names by the defendants.

Although the crime of conversion, and conspiracy in connection with the Domain Names, which includes the auctioning of fourteen Domain Names during the month of May 2010, has been brought up in both Courts, it appears there are entities still considering to, in my view, illegally/wrongfully auction the remaining number of Domain Names.

For those who would become involved in further attempts to auction any of these particular Domain Names, it would be necessary for me to bring those parties, either into one of the on-going actions, or into a separate lawsuit as defendants, a draft copy of which I have attached.

John Zuccarini

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(DRAFT)
Case No.  _____- Civ

**JOHN ZUCCARINI,**
    **Plaintiff**

vs

**LATONA'S, LLC.;**
**TARGETED TRAFFIC DOMAINS, INC.;**          **JURY TRIAL**
**RICK SCHWARTZ;**                            **DEMANDED**

    **Defendants**
_____/

## VERIFIED COMPLAINT FOR DAMAGES

1. This action is brought by Plaintiff John Zuccarini against the above named Defendants for breach of contract, conspiracy, conversion; Plaintiff seeks damages, injunctive relief, declaratory relief, any other relief the Court sees fair and just, as well as court costs.

## PARTIES TO THE ACTION

2. Plaintiff, **John Zuccarini**, is a citizen of the state of Florida, and at all times relevant has resided at:  190 SW Kanner Highway; Stuart, FL  34997.

3. Defendant **Latona's LLC** (Latona) is a for-profit Limited Liability Corporation existing and under the laws of Georgia, during all times relevant, their principal

executive offices were located at: 3 West Paces Ferry Road, Suite 201, Atlanta, GA 30305; they can be served with Process through their **Registered Agent** Matthew P. Collins, located at: 3 West Paces Ferry Road, Suite 201, Atlanta, GA 30305, where they can be served with process..

4. Defendant **Targeted Traffic Domains, Inc.** (TTD) is a for-profit corporation existing and organized under the laws Florida, during all times relevant, their principal place of business was located at: 1152 N. University Drive, Suite 201, Pembroke Pines FL 33024; they can be served with Process through their **Registered Agent** Howard M. Neu located at 1152 N. University Drive, Suite 201, Pembroke Pines FL 33024, where they can be served with process.

5. Defendant **Rick Schwartz**, a natural person, during all times relevant, his principal place of business was located in: Boynton Beach, Florida, with an address of Box 4357, Boynton Beach, FL 33424, where he can be served with process.

6. The Defendants,[1] and each of them, are the agents, employees, representatives, partners, officers, principals and/ or joint venturers of each of the remaining defendants, and in doing the things hereinafter alleged, were acting within the scope, course and purpose of such agency, employment or position, or within

---

[1] Whenever appearing in this complaint, each and every reference to Defendants or to any of them, is intended to be and shall be a reference to all Defendants hereto, and to each of them, unless said reference is specifically qualified.

2

the apparent scope, course and purpose of such agency, employment or position and with permission and consent of each of the remaining defendants.

7. Plaintiff is informed and believes, and upon such information and beliefs allege, that each of the Defendants, inclusive, were, at all times herein mentioned, acting in concert with, and in conspiracy with, each and every one of the remaining Defendants.

## JURISDICTION

8. This Court has jurisdiction of this action pursuant to 28 U.S.C. §1332 (a), as this is a diversity action; the parties are citizens of different states,[2] and the matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs.

## FIRST CAUSE OF ACTION
### Conversion

9. Plaintiff incorporates by reference paragraphs 1 through 9, inclusive, of this Complaint including all unnumbered paragraphs of general allegations as if the same were fully set forth herein.

10. Over the years, Plaintiff has obtained and registered numerous domain names.

11. A Domain name registrant acquires "the intangible contractual right to use a unique domain for a specified period of time"; "a domain name registration is

---

[2] §1332(c)(1) "a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business"

3

the product of a contract for services between the registrar and registrant."[3]

12. Defendants, Latona's, Targeted Traffic Domains Inc. and Rick Schwartz are all Organizers of T.R.A.F.F.I.C Domain Conference and Expo, which conducts trade shows and auctions related to Internet domain names. ***Exhibit A***

13. The defendants in the matter before this Court, became involved through parties to an unrelated, case in US District Court for the Northern District of CA, San Francisco, that caused over One Hundred (100) of Plaintiff's Domain Names, to be illegally converted into his own name so that they could be auctioned off to the highest bidder.

14. Surely, all the Defendants are familiar with the Palacio v. McMahon case and the findings of the 9th Circuit Court of Appeals cases involving domain names.

15. Defendants, Latona's, Targeted Traffic Domains Inc. and Rick Schwartz have entered in an agreement to auction domain names that are the subject of two on going Federal Court cases in California and Florida, with and appeal related to the domain names that would be auctioned in the Ninth Circuit Court of Appeals. Those cases being, DS Holdings LLC vs Zuccarini (C-06-80356-SI) being heard in the Northern District of California and currently on appeal to the

---

[3] ***Network Solutions, Inc. v Umbro Int'l, Inc.*** 259 Va. 759, 529 S.E.2d 80, 86 (2000); (quoting ***Doer v. Arel***, 60 F. Supp. 2d 588, 561 (E.D. Va. 1999)). See also ***Palacio del Mar Homeowners Ass'n v. McMahon***, 174 Cal. App. 4th 1386, 1391, 95 Cal. Rptr. 3d 445, 449 (2010)(Domain name registration supplies the intangible 'contractual right to use a unique domain name for a specified period of time.'")

9th Circuit Court of Appeals (10-16383), and Zuccarini vs. Namejet LLC, Network Solutions LLC, VeriSign Inc., Enom Inc., (2:10-CV-14178-KMM) being heard in the Southern District of Florida.

16. The third party continues to hold ninety-three (93) Domain names, which NSI and/or Enom unlawfully aided and allowed conversion of Plaintiff's property.

17. During the month of May 2010, fourteen (14) of the ninety (90) domain names transferred by NSI were auctioned by NameJet, in violation of CA and VA statutes. Plaintiff believes that the remaining Domain names will be unlawfully auctioned off as well, if this Court fails to act swiftly.

18. Domain Names have the potential to "produce good income for the party registering the domain names"; the names held at this particular time are producing around Five Thousand Eight Hundred Dollars ($5800.00) per month, which would be part of Plaintiff's livelihood, and his future.

19. Plaintiff has suffered irreparable harm, as one of the domain names, govermentgrants.com was auctioned for Fifty-Three Thousand Twenty-Two Dollars ($53,022.00) **"Exhibit B."**[4]. Several other Domain Names owned by Plaintiff auctioned the same day, for a total of around Sixty-Five Thousand Dollars ($65,000.00) (D-2).

20. NSI's judicially admitted, the amount of the fourteen (14) domain names that

---

[4] Enom/NameJet, wrote the article in Exhibit C , and according to Enom/NameJet, the Domain Name that auctioned for "$53K" is worth "$500K"  (C-1)

5

were auctioned totaled around $80,000.00 (B-7 first paragraph).

21. Ninety-three (93) Domain Names that were unlawfully transferred from Plaintiff to a third party, Blacksburg, are still in the hands of that third party; but it is only a matter of time until those domain names are also auctioned off.

22. The domain names that were previously auctioned off unjustly enriching in the neighborhood of Eighty-Thousand Dollars ($80,000.00);.

23. Both VeriSign and NSI have a reputation for the unlawful transfer of domain names to other individuals, as shown in Domainnamenews.com (DNN) article "***Network Solutions Front-Running Leads to $1 Million Class Action Settlement***" by Adam Strong[5] dated April 29, 2009 **"Exhibit C".**

24. Even before that, on April 10, 2008 the Domainnamenews article "***Network Solutions Got Game - Hijacking Sub-Domains*** - by Chad Ketter; showed that Network Solutions' "lust for profits", has caused issue of "whether or not the company is looking to make money through controversial means, but rather of question of how far they're willing to go to do so." **"Exhibit D"**

25. Another article from CnetNews.com discusses the infamous "sex.com" case[6] that named as defendants, both VeriSign and NSI; the case was taken to court on the grounds that the defendants in that case, allowed someone else to take

---

[5] Adam Strong is also DNN founder:  http://www.domainnamenews.com/up-to-the-minute/dnn-founder-adam-strong-joins-growing-partnership-mocom/7663

[6] ***Kremen v. Cohen***, 337 F.3d 1024 (9th Cir. 2003)

that Plaintiff - Kremen's Domain name, sex.com. **"Exhibit E"**

26. The actions of the defendants were committed intentionally, willfully, wantonly, maliciously, and with total disregard of the contract and Plaintiff's Rights.

27. As a direct and proximate result of the defendants' actions, the Plaintiff suffered a great loss and injury, and will continue to suffer great loss and injury, from the acts of the defendants.

28. Plaintiff thus demands an award of compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000.00) from each defendants, and actual, and punitive damages.

## SECOND CAUSE OF ACTION
### Civil Conspiracy

29. Plaintiff incorporates by reference paragraphs 1 through 28, inclusive, of this Complaint including all unnumbered paragraphs of general allegations as if the same were fully set forth herein.

30. It has been well founded that "the right to use a domain name is a form of intangible personal property"[7]

31. "Registrants have a legitimate claim to exclusivity". "It informs others that the

---

[7] ***Network Solutions, Inc. v Clue Computing, Inc.,*** 946 F.Supp. 858, 860 (D.Colo. 1996)(same)

7

domain name is the registrant's and no one else's."[8]

32. There was "wrongful disposition of Plaintiff's property right and damages" from the giving away of the domain names.

33. The acts of the defendants have caused Plaintiff's future to become more uncertain than it already is, has effected and hindered his livelihood, and his ability to pay his debts.

34. The actions of the defendants were committed intentionally, willfully, wantonly, maliciously, and with total disregard of the contract and Plaintiff's Rights.

35. As a direct and proximate result of the defendants' actions, the Plaintiff suffered a great loss and injury, and will continue to suffer great loss and injury, from the acts of the defendants.

36. Plaintiff thus demands an award of compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000.00) from each defendants, and actual, and punitive damages.

37. Defendants, all of whom have been heavily involved in laws concerning domain names for quite some time, and have actual knowledge of laws concerning intangible property, as well as actual knowledge of domain names; they worked a conspiracy to auction off Domain Names that they had actual

---

[8] See *G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv, Inc.*, 958 F.2d at 900; *Kremen v. Cohen*, 337 F.3d 1024 (9th Cir. 2003)

knowledge had been illegally converted from Plaintiff.

38. Defendants, each of them, have actual knowledge, that under California and Virginia laws, which is where the conversion occurred, intangible property cannot be levied upon.

39. Defendants agreed, between and among themselves, to engage in action and in a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to transfer and auction the domain names.

40. The only logical conclusion for these attorneys, and domain name experts, auctioning by lawful means, that which was gotten through unlawful means, resulting in a substantial amount of money going to the defendants, while the guilt pointed to the third party, and not to themselves.

41. Defendants agreed between and among themselves to engage in the conspiracy for the common purpose of accruing economic gains for themselves, at the expense and detriment to the Plaintiff.

42. The act was made possible because the relationship between themselves, VeriSign, NSI, and Enom/NameJet.

43. The acts of the defendants have caused Plaintiff's future to become more uncertain than it previously was, has effected and hindered his livelihood, and his future ability to pay his debts.

44. The actions of the defendants were committed intentionally, willfully, wantonly, maliciously, and with total disregard to state and federal laws, rules and regulations..

45. As a direct and proximate result of the defendants' actions, the Plaintiff will continue to suffer great loss and injury, from the acts of the defendants.

46. Plaintiff thus demands an award of compensatory damages in the amount of Five Hundred Thousand Dollars ($500,000.00) from each defendants, and actual, and punitive damages.

## CAUSE OF ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF AGAINST ALL DEFENDANTS

47. Plaintiff incorporates by reference paragraphs 1 through 46 inclusive, of this Complaint including all unnumbered paragraphs of general allegations as if the same were fully set forth herein.

48. Plaintiff alleges that an actual controversy exists as to the following issues:

49. That a judicial declaration is necessary and appropriate at this time under the circumstances in order that Plaintiff may ascertain his rights, and as to defendant's right to reclaim the auctioned domain names; all proceeds unjustly gained by the defendants; and all of Plaintiff's domain names transferred unlawfully to a third party.

50. Plaintiff alleges that actions of the defendants have undermined their right to

any proceeds from the auction of domain names, and that they have interfered, continue to interfere, and will interfere in the future with Plaintiff's right to hold intangible property, which both CA and VA laws have stated are not subject to turnover, garnishment, etc.

51. By the action above and set forth herein, Plaintiff has a strong likelihood of prevailing on the merits of the case. Plaintiff requests that this Court grant a Preliminary Injunction restraining order, and injunctive relief under Fed. R. C. P. Rule 65(b); Fla. R. Civ. P.: 1.610 to prohibit the sale/auctioning of domain names, and secondly a permanent injunction precluding defendants from engaging in the wrongful conduct identified herein in the future.

## PLAINTIFF'S REQUEST FOR RELIEF AND JUDGMENT AGAINST THE DEFENDANTS, AND EACH OF THEM AS FOLLOWS:

52. Plaintiff incorporates by reference paragraphs 1 through 51, inclusive, of this Complaint including all unnumbered paragraphs of general allegations as if the same were fully set forth herein

53. That the transfer of domain names to a third party be deemed illegal and void, and the same be permanently enjoined, and relinquish to Plaintiff the sum of Eighty Thousand Dollars ($80,000.00) that defendants were unjustly enriched.

54. That the selling/auctioning of the domain names is illegal and void, and the fourteen (14) auctioned domain names must be returned. "***Exhibit F***"

55. That the actions of all defendants be determined to be unfair and deceptive business practices in Violation of CA law, VA law, and that this Court award all such relief to Plaintiff as he may be entitled to, including treble damages and an award of costs and attorney's fees;

56. That the actions of defendants be determined to be in violation of Cal. Civil Code, Va. Civil Code, and Fla. Civil Code.

57. A permanent injunction precluding defendants, and each of them from engaging in the wrongful conduct identified herein;

58. For compensatory damages against each defendant for not less than $500,000.00;

59. For punitive and exemplary damages against defendants in a sum to be decided by a Jury or the Court, or by whatever means are appropriate.

60. For award of court costs and reasonable costs incurred due to the suit; and

61. For any other relief this Court may deem fair and just.


Respectfully submitted, this ___ day of August, 2010


                                        By: _____
                                            JOHN ZUCCARINI, Pro Se
                                            190 SW Kanner Highway
                                                 Stuart, FL  34997
                                               raveclub@comcast.net
                                                   (772) 631-3887

## VERIFICATION

I, John Zuccarini, am the Plaintiff in the above-titled action. The foregoing complaint has been prepared from firsthand knowledge. Further, I have reviewed the contents and state that all allegations have come from my own knowledge, and are true and correct. The Exhibits, although some are taken from articles, have not been altered in form or substance except to format into a printable material for use as Exhibits, and the website links for each is included herein. I have reviewed each Exhibit and state that they are true and correct in accordance with my first hand knowledge. I so declare, under penalty of perjury.

_____

JOHN ZUCCARINI

Subscribed to and Sworn Before Me
This \_\_\_ day of _____, 2010

_____
NOTARY PUBLIC, State of Florida

# Exhibit B

# Karl Kronenberger

**From:** John Z [raveclub@comcast.net]
**Sent:** Wednesday, August 04, 2010 9:47 AM
**To:** howard@neulaw.com
**Cc:** rick@ricklatona.com; domainking@gmail.com; Moore, Tom (USACAN); Karl Kronenberger; Hank Burgoyne; Jeff Rosenfeld; Michael Blacksburg
**Subject:** Concerning auction and your representation of me in Office Depot case - John Zuccarini

Howard,

I am writing in reference to the proposed auction at the Traffic Conference in Miami for August 19, 2000, and your representation of me as my attorney in the original Office Depot case.

As you are aware, as you represented me when the Office Depot case was first filed in April 2000, and while your name is not present on the Pacer web site, you had make telephone contact with the attorney of record at that time for Office Depot in hopes of coming to a settlement, although that did not work out in the end.

You did as you may recall, as I checked the Pacer site today, on December 13, 2000 file an affidavit on my behave, although it was rejected by the Court, as you had forgotten to use lined numbered paper for the document. No doubt though that document is on file with the court.

In consideration of these circumstances, I believe it to be extremely unethical, for you to conduct and if not illegal, also completely unethical, for you to financially benefit from any auction of the domain names for the Office Depot case.

John Zuccarini