John Zuccarini
190 SW Kanner Highway
Stuart, Florida 34997
(772) 631-3887

Pro Se Defendant



FILED
2010 AUG -3 A 11: 50
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

## UNITED STATES DISTRICT COURT

## NOTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| OFFICE DEPOT INC., a Delaware Corporation,<br><br>Plaintiff,<br><br>vs.<br><br>JOHN ZUCCARINI, individually and d.b.a. COUNTRY WALK; and DOES 1 through 10, inclusive,<br><br>Defendants.<br><br>DS HOLDINGS, LLC a Colorado limited liability company,<br><br>Assignee,<br><br>vs.<br><br>JOHN ZUCCARINI, individually and d.b.a. COUNTRY WALK; and DOES 1 through 10, inclusive,<br><br>Defendants. | Case No. C-06-80356-SI<br><br>MOTION TO:<br><br>1. OPPOSE MOTION TO SHORTEN TIME TO HEAR MOTION TO AUTHORIZE SALE OF DOMAIN NAMES.<br><br>2. ORDER PLAINTIFF DS HOLDINGS AND RECEIVER TO SUPPLY ZUCCARINI WITH ALL PROPOSALS AND INFORMATION USED TO EVALUATE MOST EFFECTIVE MEANS OF AUCTIONING DOMAIN NAMES.<br><br>3. DELAY HEARING TO AUTHORIZE AUCTION OF THE DOMAIN NAMES UNTIL ZUCCARINI HAS SUFFICIENT TIME TO EVALUATE PROPOSALS FOR THE AUCTION.<br><br>4. OPPOSE DISTRIBUTION OF PROCEEDS IN POSSESSION OF POST-JUDGMENT RECEIVER.<br><br>5. ORDER ALL PARTIES TO PROVIDE ZUCCARINI WITH DETAILS OF DISTRIBUTION OF PROCEEDS IN POSSESSION OF POST-JUDGMENT RECEIVER. |

1

A. **Motion to Oppose Motion to Shorten Time to Hear Motion to Authorize Sale of Domain Names.**

1. **DS Holdings and Receiver Have Not provided Defendant Zuccarini Any Information Related to Proposals of Prospective Auction Alternatives.**

While informed by the receiver Michael Blacksburg that I would be provided with the proposal of Latona's Brokerage and Auction House, ("Latona's"), to offer the domain names of this case for auction at the T.R.A.F.F.I.C Domain Conference and Expo ("TRAFFIC") in Miami, Florida, on October 19, 2010, neither the receiver or DS Holdings ("DSH") have provided me with this proposal or any other information that DSH and the receiver claim to have used in determining that Latona's offered the best means to auction the domain names.

Subsequently, conducting what research I could without the benefit of a definitive proposal from Lotona's in my possession, I found this auction to be an invitation only, closed live event attended by only a relatively small number of people, with the cost of entering and being part of the live auction held by Latona's, in partnership with TRAFFIC and conference organizers, Rick Latona, Howard Neu and Rick Shwartz, to be between $1295 and $1795, depending on the date you register. On the home page of the web site for TRAFFIC, targetedtraffic.com, Rick Latona, Howard Neu and Rick Shwartz are stated to be conference organizers.

http://www.targetedtraffic.com *Exhibit A*

http://www.targetedtraffic.com/miami/registration-pricing.php *Exhibit B*

It is also my understanding that while DSH references a live Internet based auction conducted by Latona's, this is also a closed, invitation only event with a certain fee to required to participate.

If these conditions and circumstances of the proposed auction by Latona's are correct, and I believe they are, I can see why Kronenberger and the Blacksburg have not furnished me with the proposal by Latona's that Blacksburg said he would, since on it's face, it is outrageous to think that this type of restrictive auctioning of the domain names could bring the highest return for the auction of any domain name, no matter the circumstances.

The receiver Michael Blacksburg stated to me in an email message of July 2, 2010 concerning the proposal of Rick Latona, "I received the Latona's proposal and will forward it to you."

This though did not occur, as I never received the proposal of Rick Latona's nor any other

2

proposal or research from Blacksburg or DSH for any Internet domain name auction entity that they claim had been researched.

### 2. DSH and Receiver Have Misrepresented Defendant Zuccarini's Statements.

During the last several months I received one phone call each from Karl Kronenberger and Michael Blacksburg related to the possible auction of the domain names. They both asked me my opinion of auctions conducted by Rick Latona, as he had been in contact with both Karl Kronenberger and Michael Blacksburg and expressed an interest in auctioning the domain names.

While I made it clear at the beginning of each conversation that I did not believe the auction of any of the domain names was legal and that I would continue to oppose it and fight against it in the courts, I agreed to give my opinion solely related to the most effective way to auction any domain name, no matter the owner.

My responses to both Karl Kronenberger and Michael Blacksburg were that I did not believe Rick Latona provided the most effective means of auctioning domain names. That his auctions were closed live events, that only a relatively small number of people attended, and this is in fact the case. That from my knowledge on-line auctions, such as those conducted by Sedo.com, LLC and SnapNames.com, that are open to everyone in the world are the most effective means of conducting an auction for any domain name.

This repsonse by myself is my accurate view of Latona's, not the one stated by DSH in their Motion to Authorize Sale, which states on lines 11 and 12 of page 2, *"Even Zuccarini has acknowledged that the proposed auction is a prominent and effective domain name auction."*

## B. Motion to Order DSH and the Receiver to Supply Defendant Zuccarini with all Proposals and Information Used to Evaluate the Most Effective Means of Auctioning the Domain Names, if that is to Occur.

Ultimately as all parties to this case would hope to receive the highest possible return, if any auction is held for the domain names, it therefore would be necessary and expected that all parties would have access to the information needed to determine the most effective means to conduct such an auction.

In consideration of these facts, it is necessary for me to have any and all information that has been acquired by DSH and the receiver in making such a decision, and I ask the Court to order DSH and the receiver to provide me with all information and proposals in their possession related to the proposed auction.

3

### C. Motion to Delay Hearing to Authorize Auction of Domain Names Until Defendant Zuccarini has Sufficient Time to Evaluate Proposals for the Auction.

As I have received no information or proposals for the proposed auction of the domain names from DSH or the receiver as stated by the receiver that I would, I ask the Court to delay any hearing to the authorize the sale of the domain names until I receive such information and have an appropriate amount time set by the Court to evaluate such information and proposals.

### D. Motion to Oppose Distribution of Proceeds in Possession of Post-Judgment Receiver.

DSH states on lines 8 and 9 of page 1 of their motion to authorize sale *"DS Holdings and the U.S. will also move the Court to authorize the distribution of the proceeds in the possession of the post-judgment receiver."*

As I have received no information related to how the proceeds in possession of the receiver will be distributed, I ask the court to not authorize the distribution of any proceeds in possession of the receiver at this time.

There are certain priorities related to the parties of the case that pertain to the distribution of the proceeds in possession of the receiver that I have not been made aware of how they will be acted upon when any distribution takes effect.

In addition I have not received any total amount claimed by any of the parties, most specifically I have not received any current information to the amount claimed by DSH, and what means were used to arrive at any amounts DSH may claim due them.

### E. Motion to Order all Parties to Provide Zuccarini with Details of the Distribution of Proceeds in Possession of the Post-Judgment Receiver.

I ask the Court to order DSH and the U.S. To provide me with the details of the distribution of all proceeds in possession of the receiver, in regard to the reasoning and legal priorities that effect that distribution.

I also ask the Court to Order DSH to provide me with the amount they believe due them till this point in time, and the legalities upon which they base that amount due.

Respectfully submitted, this 2nd day of August, 2010

By: *John Zuccarini*
John Zuccarini
Pro Se Defendant

4

# Exhibit A