IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OFFICE DEPOT, INC., | No. C 06-80356 SI |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART AMENDED MOTION TO AUTHORIZE SALE OF DOMAIN NAMES AND DISTRIBUTION OF PROCEEDS** |
| v. | |
| JOHN ZUCCARINI, | |
| Defendant. | |
| DS HOLDINGS, LLC, | |
| Judgment Creditor, | |
| v. | |
| JOHN ZUCCARINI, | |
| Judgment Debtor. | |

Judgment creditor DS Holdings, LLC and intervenor the United States have filed an amended motion to authorize auction of domain names currently in the receiver's possession and the distribution of proceeds from the auction to satisfy DS Holdings' judgment and the United States' tax liens against defendant John Zuccarini. For the reasons set forth below, the amended motion is GRANTED as to the auction and DENIED WITHOUT PREJUDICE as to the distribution of auction proceeds.

**BACKGROUND**

On September 10, 2007, the Court granted DS Holdings' ex parte application for appointment of a receiver to hold certain internet domain names owned by Zuccarini, so that the domain names may

1 be auctioned off to satisfy the judgment against Zuccarini. (Docket No. 30). The Court stayed the
2 auction of the domain names pending the outcome of Zuccarini's appeal to the Ninth Circuit, but
3 declined to stay the transfer of the domain names to the receiver's possession. (Docket No. 47). The
4 same day, the Court lifted its preservation order for the sole purpose of transferring control of the
5 domain names to the receiver. (Docket No. 48). After the Ninth Circuit affirmed the appointment of
6 the receiver, this Court denied Zuccarini's motion to further stay the auction of the domain names until
7 the time for filing a cert petition with the Supreme Court had expired. (Docket No. 95).[1]

8 Thereafter, the receiver inadvertently permitted some of the domain names to lapse, and both
9 parties moved for emergency relief barring further sales or transfers of the domain names in the
10 receiver's possession. On June 15, 2010, the Court denied the motion, stating that "[t]he receiver and
11 the parties are free to agree on a procedure for auction of the approximately 116 domain names that
12 remain in the receiver's control, subject to the Court's approval." (Docket No. 119). Pursuant to that
13 statement, DS Holdings and the United States now seek an order permitting the auction of the domain
14 names at an auction to be held in conjunction with Latona's Brokerage & Auction House ("Latona's").[2]

16 **DISCUSSION**

17 **I.     Auction of Domain Names**

18 California law governing receiverships permits a receiver who has been appointed to enforce a
19 judgment to "dispose of the property according to the judgment, or to preserve it during the pendency
20 of an appeal." Cal. Civ. Proc. Code § 564(3)-(4). A court overseeing a receivership "has full power to
21 order the receiver to dispose of property in such a manner as the court may deem to be for the best
22 interest of the parties concerned and the advice of the receiver and his opinion in regard to the value of
23 the property, the manner, time and place of its disposition are entitled to great respect and weight."
24 *Wells Fargo Fin. Leasing, Inc. v. D & M Cabinets*, 99 Cal. Rptr. 3d 97, 106 (Cal. Ct. App. 2009).

---

[1] During the pendency of these proceedings, the domain names have generated revenue which has remained in the receiver's possession except as necessary to pay expenses. Blacksburg Decl. ¶ 3.

[2] D.S. Holdings and the government initially proposed that the domain names be auctioned at the T.R.A.F.F.I.C. Domain Conference & Expo, to be held in Miami, Florida on October 19, 2010. However, T.R.A.F.F.I.C. later decided not to participate, as explained further below.

2

DS Holdings, the United States, and the receiver propose to auction the domain names in conjunction with Latona's. The receiver has submitted a declaration which avers that Latona's is "one of the most prominent auction houses for domain names." Blacksburg Decl. ¶ 8. Both DS Holdings and the United States have agreed to the receiver's suggested auction procedure, which will involve auctioning the domain names using appropriate reserve prices. *Id.* ¶ 11. Any domain names that are not sold because the reserve price is unsatisfied will remain in the receiver's possession and will continue to generate revenue "until the next appropriate auction, or until the Court directs otherwise." *Id.* ¶ 13. In the Court's view, the receiver's recommendations, supported as they are by DS Holdings and the United States, and backed up by the receiver's research, are entitled to weight. Given that it is in the interest of all parties – including Zuccarini – to obtain the highest possible revenues for the domain names, the Court is persuaded that the proposal to auction the domain names in conjunction with Latona's is appropriate.

The Court wishes to note that DS Holdings and the United States initially sought to auction the domain names at the T.R.A.F.F.I.C. Domain Conference & Expo. The receiver stated that T.R.A.F.F.I.C. was "the domain industry's premier conference, attracting attendees that control over 20 million domain names with 50 million unique daily visitors." *Id.* ¶ 7. In opposing the proposed auction process, however, Zuccarini argued that the use of T.R.A.F.F.I.C. raised the specter of a conflict of interest because Howard Neu, an attorney who represented Zuccarini in the underlying action filed by Office Depot, is a co-owner and organizer of T.R.A.F.F.I.C. The Court asked for a supplemental response from DS Holdings and the United States concerning the conflict issue. They have responded that although no conflict exists given the limited nature of Neu's prior representation of Zuccarini and the fact that Neu and Zuccarini now share the objective of maximizing auction prices for the names, the issue has become moot. Apparently as a result of certain communications sent by Zuccarini,[3] Neu and T.R.A.F.F.I.C. have decided not to participate in the auction. The auction will now be run by Latona's. Zuccarini has not identified any conflict or other problem arising from the partnership with Latona's.

The amended motion to authorize auction of the domain names is therefore GRANTED. The

---

[3] These allegedly threatening communications form the basis of a separate motion for contempt filed against Zuccarini by DS Holdings.

3

February 20, 2007 Preservation Order is MODIFIED in order to permit the auction. DS Holdings and the United States shall notify Zuccarini and the Court once they have finalized the date and location for the auction.

## II. Distribution of Proceeds

DS Holdings and the United States also move for an order permitting distribution of the auction proceeds to satisfy their judgment and tax liens, respectively. Zuccarini opposes this request on the ground that DS Holdings and the United States have not provided a distribution plan or informed Zuccarini of their respective priority of interests or the total amount remaining on his obligations. The Court agrees that DS Holdings and the United States must inform Zuccarini and the Court of the total proceeds from the auction, the order of priorities, and the total amount outstanding on Zuccarini's obligations before the receiver may distribute the proceeds. The motion to authorize distribution of the auction proceeds is therefore DENIED at this time. Within thirty days of the completion of the motion, DS Holdings and the United States shall file with the Court and serve on Zuccarini a proposed distribution plan that incorporates the information listed above.

## CONCLUSION

For the foregoing reasons and for good cause shown, the Court hereby GRANTS the motion to authorize auction of the domain names and DENIES the motion to authorize distribution of the auction proceeds. (Docket No. 140). DS Holdings and the United States shall file a proposed distribution plan within thirty days of the completion of the motion.

**IT IS SO ORDERED.**

Dated: September 7, 2010

SUSAN ILLSTON
United States District Judge

4