Exhibit A

**Karl Kronenberger**

| | |
|---|---|
| **From:** | Rick Latona [rick@ricklatona.com] |
| **Sent:** | Thursday, September 09, 2010 8:19 AM |
| **To:** | Karl Kronenberger |
| **Subject:** | FW: Rick - domain names - John Zuccarini |
| **Attachments:** | 10-14178-plaintiff-verisign-response.pdf; 10-14178-plaintiff-verisign-amended.pdf |

**From:** John Z [mailto:raveclub@comcast.net]
**Sent:** Wednesday, September 08, 2010 11:21 PM
**To:** Rick Latona
**Subject:** Rick - domain names - John Zuccarini

Rick,

I understand you have agreed to auction the domain names in
possession of blacksburg.

I have to let you know that is indisputable that all the domain names
were obtained by kronenberger and blacksburg by fraudulent means.

To explain the fraudulent means, network solutions and enom, in violation
of the my registrant agreement with both, gave the domain names away.

There was absolutely no court order directed to the registrars to transfer
the domain names.

I have attached my response to VeriSign which clearly demonstrates that
kronenberger and network solutions reached an agreement to transfer the
domain names, for reasons that have not been explained and that there was
no court order directed to the registrars.

I am writing you to let you know that if you decide to go ahead with the auction
there is a very good chance you will be added to the existing suit in Florida.

By auctioning the names you will be auctioning fraudulently obtained items.

I am asking you to get back me as soon as possible to let me know what
your intentions are.

Thank you,

John Zuccarini

### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF FLORIDA
### Case No. 10-CV-14178-MOORE/LYNCH

**JOHN ZUCCARINI,**
**Plaintiff**

        **vs**

**NAMEJET, LLC;**
**NETWORK SOLUTIONS, LLC;**
**VERISIGN, INC;**
**ENOM, INC;**
**Defendants**
_____/

### PLAINTIFF'S RESPONSIVE OBJECTIONS TO DEFENDANT VERISIGN, INC.'S RULE 12(b)(6) MOTION TO DISMISS and PLAINTIFF'S MOTION TO ENTER DEFAULT IN THE RECORD

COMES NOW, Plaintiff, John Zuccarini and files his ***Plaintiff's Responsive Objections to Defendant VeriSign, Inc.'s Rule 12(b)(6) Motion to Dismiss, and Plaintiff's Motion to Enter Default in the Record.*** In support of Plaintiff's Responsive Objections, and Motion to Enter Default in the Record, Plaintiff incorporates by reference the Responsive Objections filed to all other Defendant's Motions to Dismiss, as if fully restated herein.

### ARGUMENT

**A.**    **The Illegal Transfer of John Zuccarini's Domain Names and VeriSign's Culpability.**

There are two central issues before The Court related to VeriSign Inc. ("VeriSign") the registrar for all .com and .net domain names, and it's working relationship with all .com and .net registrars. That is, does a domain name registry have the power to correct an illegal action by a domain name registrar, as in this case the illegal transfer of domain names by the registrars, and does a Federal Court Order have the authority to Order a registry to rectify such an illegal action by a registrar. The answer to both is unquestionably yes.

1

This issue was directly addressed in **America Online, Inc. v. AOL.org**, 259 F. Supp. 2d 449, 454 (E.D. Va. 2003).  A Federal Court in Virginia ordered the registry for all .org domain names, Public Interest Registry ("PIR") to transfer to the Plaintiff, America Online Inc. ("AOL") the domain name "aol.org" which was won in an ***in rem*** action under the Anticybersquatting Consumer Protection Act ("ACPA"), because the registrar of the domain name, Online NIC Inc., located in China refused to transfer the domain name as ordered by a Federal Court, but allowed instead the registrant of the domain name to transfer the domain name to another registrar, Netpia.com, Inc. in South Korea.  Subsequently because of this illegal transfer the plaintiff, AOL asked the Court for an amended motion to Order the registry, PIR to transfer the domain name to AOL, and the Court correctly granted that motion.

The circumstances in the **Office Depot v Zuccarini** post-judgment case, and the **America Online, Inc. v. AOL.org** case are identical in that the registrars, Network Solutions ("NSI") and eNom, ("eNom") both committed an illegal act, which they refuse to acknowledge, as did the registrar Online NIC Inc., in **America Online, Inc. v. AOL.org.** That illegal act being the transfer of the domain names from the ownership of the John Zuccarini ("Zuccarini or Plaintiff"), in violation of the registrar / registrant agreements with Zuccarini, to Michael Blacksburg ("Blacksburg"), the reciever of **Office Depot, Inc. v. Zuccarini, Case No. CV-06-80356-SI, N.D. Cal.** The transfer of the domain names was the result of an illegal agreement made (the conspiracy, before The Court) made by the DS Holdings, ("DSH") in the **Office Depot v Zuccarini** post-judgment case, with all of the domain name registrars at which Zuccarini owned domain names.

**B.      VeriSign Has Failed to Identify the Alleged Court Order to Transfer the Names.**

As is with all the Defendants, the claim of a Court Order which required the registrars to

2

transfer Zuccarini's domain names is often stated to The Court, but never produced by any of the Defendants. VeriSign fares no different. VeriSign states on page 1 of their motion.

> "the alleged transfer was made pursuant to court orders entered against Plaintiff by the District Court for the Northern District of California in the pending action, Office Depot, Inc.v. Zuccarini, No. 3:06-mc-80356-SI,"

Despite stating the transfer was made pursuant to court orders against Zuccarini, and in spite of a voluminous amount of exhibits supplied to The Court in their pleadings, VeriSign has failed to explicitly identify any of those exhibits as the court order to which they are referring.

**C.     Court Order Has Never Existed to Order Registrars to Transfer the Domain Names.**

All the Defendants in this case continue to cling, to the inaccurate assertion that The District Court for the Northern District Court of California had Ordered the transfer of Zuccarini's domain names from all of the domain name registrars, which include NSI and eNom, to the receiver Blacksburg, as this could be the only possible reason that the transfer could be found legal. Clearly though, all statements and Orders by the District Court in California indisputably show that The Court did not order NSI, eNom or any domain name registrar to transfer Zuccarini's domain names to the receiver Blacksburg.

Considering NSI's and eNom's refusal to acknowledge or correct the illegal transfer of the domain names, and in the absence of VeriSign voluntarily correcting this illegal act by the registrars in transferring the domain names back to Zuccarini's ownership. This Court is asked to intervene, and Order the domain name registry, VeriSign, to return all the illegally transferred domain names back to Zuccarini.

**D.     VeriSign's Motion to Dismiss.**

VeriSign, like all other Defendants assert Zuccarini's domain names were transferred in response to a Court Order directed to the registrars. This is a completely false, as the November

14, 2007 Order titled **"Order Granting Receiver's Request To Lift Preservation Order"** cited by all Defendants was directed at receiver Blacksburg, not the registrars, to carry out the steps of the illegal agreement between DSH and registrars to transfer Zuccarini's Domain Names. **Exhibit A.**

DSH Appellee's Brief filed in the 9th Circuit Court of Appeals, page 2, clearly states the cooperation and agreement between DSH and the registrars to transfer Zuccarini's domain names. *"The district court denied DSH's request, concluding that it could not order third parties to turn over property pursuant to the applicable California statue, section 699.040 of the California Code of Civil Procedure. AER 46-47. After the registrars informed DSH that they would be willing to cooperate with a receiver, DSH applied for the appointment of a receiver to collect and ultimately dispose of the subject domains..."* **Exhibit B.**

VeriSign also comments of a pending action in the Northern District of California; the pending action, is actually on appeal in the 9th Circuit, taken from **post-judgment** proceedings.

**E.     VeriSign's Claim "Plaintiff did not have a right to possess"**

One can only conclude that VeriSign themselves, deemed that "Plaintiff did not have a right to possess" the domain names (MTD,pg.1,2nd¶), and that somehow makes them not guilty of conspiracy and conversion/theft.  The fact remains that **neither the Court, nor the FTC made that claim.**   The The Federal Trade Commission ("FTC') believes that Zuccarini rightfully owns / possesses the domain names, thus the reason the FTC froze the names. Had Zuccarini not had a right to the names, FTC would have taken them from him. The Federal Trade Commission's actions against Zuccarini relate primarily to the use of the domain names, not ownership by Zuccarini, except circumstances of trademark violations and similarities to other domain names.

Further, VeriSign claims "every material issue presented by the instant Complaint— including Plaintiff's right to possession of the domain names and whether the transfer was a

"wrongful transfer" already has been decided….The orders entered against Plaintiff…", their footnote 1, then goes on to pretend that they **only** reference to filings and orders "for the limited purpose of recognizing the 'judicial act' that the order represents or the subject matter of the litigation"  "as opposed to recognizing it for the truth of the matters asserted in the other litigation."  The statement in the footnote completely and utterly contradicts the way they use the filings and orders, throughout their entire pleading.

The ruling in the Ninth Circuit Appeals Court Case referenced by VeriSign, **Office Depot Inc. v. Zuccarini, 596 F.3d 696, 698-99 (9th Cir. 2010),** did not address any of the issues before this Court, that is the illegal transfer of the domain names by NSI or eNom, but only appealed the illegal use of the domain names. Zuccarini's only assertion in that appeal was, as the Third Circuit Court had found through FTC actions that many of the domain names, in their misspelling and inherent similarity to other domain names illegally transferred Internet Users to unintended destinations, that this finding could not nullified simply because ownership of the domain names had changed, that the domain names would continue to illegally redirect any Internet user, not matter the owner of the domain name. The Court did not accept that argument as a reason not to transfer the domain names to the receiver Blacksburg.

Further, VeriSign claiming use of the alleged Order only for "the act", "District Court and Court of Appeals…Plaintiff was not entitled to immediate possession of the disputed domain names…", yet the only reference to that having been said, is "in **Office Depot**".  Considering that the FTC had frozen the domain names, it is true that Plaintiff did not have immediate possession of the Domain names, but the FTC did not say that they domain names did not belong to Plaintiff, or that Plaintiff would never be permitted to have immediate possession of them.

5

F.    **VeriSign's Participation.**

VeriSign twists the truth, attempting to show that they were in no way involved in the conspiracy, conversion or theft of, Plaintiff's domain names.  To the contrary, the Courts have held that it was VeriSign that gave CA jurisdiction, that VeriSign is the registry, that VeriSign has the ability to change the names of registrants, and when all is said and done, DS Holding's Appellee's Brief filed in the 9th Circuit Court of Appeals, tells of a complete  story, indicating the depth of VeriSign's involvement. ***Exhibit B.***

Beginning on page 2 of the Brief with: "DSH explained that the Northern District was the proper venue for its application because VeriSign, Inc., the domain name registry for all ".com" and ".net" domain names is located…"

On the same page, DSH discusses the conspiracy, if DSH could get a receiver appointed. Then on page 5, *fn1:  "As the 'official registry'… VeriSign has ultimate authority and control over the ownership and registration of .com and .net domain names.  For this reason, DS Holdings has brought…in the District"  "[I]ndependant [domain name] registrars coordinate with VeriSign in maintaining VeriSign's central domain name registry…Nevertheless, ultimate control…is in the hands of the registry".

And further, on page 13; 3rd ¶ "The district court thus determined correctly that the Northern District of California…because the registry, VeriSign is located here."  And page 14, last ¶:  "With registrars all over the world…-here VeriSign- is the appropriate location…"; Page 15:  "…**and levy upon the domain names <u>through VeriSign</u>**…", 2nd¶:  "… **registrars scattered around the world**…The approach…focusing on the **single-situs registry rather than numerous and far-flung registrars**…"; Page 17:  2nd ¶:  "VeriSign has its headquarters based in California…DSH provided the district court with records… from the California Secretary of State…"

VeriSign spends a lot of words trying to be convince the Court that they committed a "non-act"; then like the rest of the defendants, go to discrediting the Plaintiff, "the world's most notorious criminal 'cybersquatters'"(MTD,pg.2); then incorporating NSI's statements "victimization,", "parasitic," "bad faith,". VeriSign then attempts to make it appear that NSI also used the terms "and criminal conduct toward others" (MTD,pg.3), though Plaintiff has failed to find where NSI, or any of the courts used the phrase. VeriSign references ***Elecs. Boutique Holdings Corp. v. Zuccarini***, but fails to state that it was another case where Plaintiff was not served with process, and ended in default against the Plaintiff for his failure to participate.[1] "The fundamental requisite of due process of law is the opportunity to be heard." ***Grannis v. Ordean***, 234 U. S. 385, 394. "The right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default".

**G.      Plaintiff's Domain Names Had Been Frozen by the FTC.**

The District Court in CA refused to give full faith and credit to the Eastern District of PA, where FTC had sued Zuccarini, because that was the only place they could obtain jurisdiction and venue, where Zuccarini lived. The CA District Court said that the rulings in PA District Court did not matter, nor did the freeze that the FTC had placed upon the domain names.

The Verisign defendants have been no angels, see "***VeriSign Now Faces Class Action Suit Over Redirection***"[2] a class action for acts that sounds amazingly identical to what they claim against the Plaintiff, "cybersquatting", "hijacking consumers", "type-o's", the big difference being, according to "The Security and Stability Advisory Committee" VeriSign is guilty of "weakening the Internet's stability."***Exhibit C.***

---

[1] It is relatively easy to win a case when you don't bother to notify the opposing party that there is one, causing him not to participate in a case.

[2] Beyond privacy, the suit alleges that VeriSign is abusing its monopoly power as the sole registry of .com and the .net domains.

VeriSign is guilty of far worse than Plaintiff has ever done, VeriSign weakened the entire "Internet's stability"; and put millions of people's privacy and passwords at risk. "VeriSign is violating privacy laws, including the federal Electronics Communications Privacy Act, said attorney Ira P. Rothken[3]".

"VeriSign is able to exert control over all unassigned and misspelled domain names because it serves as the government-approved registry, or ultimate traffic director, for domain names ending in .com or .net."  "Previously, if a name did not exist--whether misspelled or simply unassigned--Web browsers would find themselves at the familiar DNS (domain name system) error page."[4] "VeriSign's redirection of .com and .net traffic not only is earning, or is intended to earn, profits for VeriSign, but it subverts the basic infrastructure of the Internet, to the detriment of numerous entities,"[5]

VeriSign would have this Court believe that just because they didn't directly contract with the Plaintiff, as the "registry", they could be guilty of no wrong-doing (MTD,pg.4). VeriSign contracts with the registrars, who do not have the ability to lift the FTC freeze of domain names.  Only VeriSign would be able to perform such a task.

According to Verisign, "Under normal circumstances, there is no human involvement… VeriSign has no knowledge of the transaction."  VeriSign makes claim that everything is automated,…translating domain names into numeric Internet Protocol numbers"  So, in other words, VeriSign is responsible for the assignment of the numbers, which the internet uses for a

---

[3] Ira P. Rothken  of the Rothken Law Firm, in San Rafael, Calif

[4] The exact thing that Plaintiff has been labeled as VeriSign's MTD stated:  "the world's most notorious criminal 'cybersquatters'"(MTD,pg.2);  then incorporating NSI's statements that "victimization,", "parasitic," "bad faith," they then  make it appear that NSI also used the terms "and criminal conduct toward others".  In reality was Plaintiff guilty as accused, or merely set up by these very entities?

[5] http://news.cnet.com/2100-1038_3-5083161.html  By John Borland Staff Writer, CNET News

particular website; it stands to reason, therefore that when there is a "freeze" put on certain domain names, or that "freeze" is lifted, the only entity that has that ability to do so, **is** VeriSign.

Plaintiff operated what is known as passive websites, websites that only had advertising on the sites.  The Judge in the ***Shields case***,[6] clearly stated

> "Zuccarini's sites did not involve pornography, his intent was the same as that mentioned in the legislative history above -- to register a domain name in anticipation that consumers would make a mistake, thereby increasing the number of hits his site would receive, and, consequently, the number of advertising dollars he would gain" ***Shields v. Zuccarini***.[7]

VeriSign and the other defendants want to paint an obscure picture of "the world's most notorious, criminal cybersquatter", "notorious serial cybersquatter", etc.  For whatever Plaintiff was guilty of, he  learned the err of his ways, has paid his debt to society, and has to date, tried to keep out of the public's reach, domain names that the FTC deemed illegal to use, or that the only use of, would be cybersquatting,.  Plaintiff even brought that up to the CA District Court, and the Court agreed that it the domain names would possibly be used for that single purpose.  The Court did nothing to assure against the domain names from being used for the very thing the FTC found Plaintiff guilty of using them for.

By what happened in the CA District Court, the domain names were allowed to go back to being used for exactly what Plaintiff got into trouble using them for, making money.  Since the domain names are being used to generate income, and they were taken from Plaintiff to satisfy a debt, the revenue should be used toward the debt; to date, none of Plaintiff's debt has decreased.  The claim is that he still owes $165,000, the same amount he owed December 2006, when DS Holdings filed the action in CA District Court.  What has happened to between One Hundred Fifty Thousand Dollars ($150,000.00) and Three Hundred Thousand Dollars

---

[6] A case in which service of process was perfected against the Plaintiff, and he did participate in.

[7]  254 F.3d 476, 483 (3d Cir. 2002);  http://www.keytlaw.com/Cases/shields.htm;

($300,000.00) is anybody's guess, but *someone* knows.

**H.    Contrary to VeriSign's Claims, the Issues in This Case Have Not Been Decided.**

VeriSign, like the other defendants, confuse the issues of this case, with the CA case. The claims in this case are conspiracy, conversion or theft, and although not listed as a Count[8], due process violations under color of law or color of authority, and fraud upon the court.

For the Court's convenience, Plaintiff has filed an Addendum which has all the CA codes that are pertinent to the claims brought up so that the Court is familiar with the codes.  Further, the codes show to the extent that CA codes were violated, and exactly what the codes state; see *Addendum*

MTD pg.6, 1st indented ¶ references CA Code §699.510, which the CA District Court used the wrong code, just as done by the Court, as was explained in ___.  There was continual changing as to entities titles, DS Holdings was not the judgment creditor, they were assignee of the judgment creditor (MTD, pg.6,2[nd]¶).

According to CA code, whenever the judgment debtor files an appeal, the action is supposed to be stayed, which was not done; whenever the judgment debtor, disputed anything about the Writ, or the new Writ (one was supposed to be re-issued every 180 days, and the judgment debtor at that time was allowed to dispute the judgment or the issuance of a new writ, which was ignored; of course there are fees to be paid to the state through the state Court Clerk for each issuance, as well;  there was only the one Writ, a Writ of Execution[9] and no fees *ever*

---

[8] Plaintiff will be Moving for Leave to Amend his Complaint to add §1983 and other claims to include the due process violations under color of law or color of authority; and to possibly correct any errors made in the pleading of conspiracy and conversion, and fraud upon the Court.

[9] The Writ of Execution was issued by the District Court Judge (supposed to be issued by the State Court Clerk); the Writ has box 7.a. checked, the property was not to be sold; further the Writ has a revised date of 1989, there have been numerous revisions since 1989, the latest in 2006.  In order to sale the property, there has to be a Writ of Sale issued, which there was never a Writ of Sale issued.

paid to the state, and the action was not stayed whenever there was a dispute, or an appeal) During one pending appeal, is when the transfer of domain names into the receiver's name took place.

Throughout the entire DS Holdings/Kronenburger Appellee Brief filed in the 9th Circuit Court of Appeals, they indicate that they didn't have to involve the Court in what they were doing (Brf., pg.12;3rd¶)("Although California law does not require a judgment holder such as DSH to seek court intervention or even to give notice before levying upon a judgment debtor's personal property…and the reluctance of their-party domain name rgistars to transfer levied upon domain names absent the appointment of the receiver")   Verisign was involved in the events that led to the case at bar; see "Exhibit appellee brief ___" .  VeriSign was the sole reason that the CA District Court gave for jurisdiction "Exhibit Order___".  For VeriSign to claim innocence, is ludicrous.  Plaintiff will need to perform Discovery in order to show the extent of VeriSign's involvement, which Plaintiff believes they will try to get out of.

I.      **VeriSign's Claim They Cannot Be Liable for Conversion Based on a Transfer Pursuant to a Court Order**

One minute VeriSign is claiming the Defense (MTD pg.17,2[nd]¶) ("registrars are granted a license to use VeriSign's systems to effectuate transfers of domain names, with no active involvement by VeriSign in the transfer process"), the next, they are claiming "Plaintiff's theory of liability would require VeriSign affirmatively to act to block the transfer of the disputed domain names, in violation of the Transfer Order, risking civil contempt" (MTD pg.18).  Clearly, the District Court, the Court of Appeals, as well as numerous orders have stated that the District Court could not direct third parties to[10] turnover property; the Court stated in the Order "***Exhibit 4***":  "Section 701.010 of the Code establishes the procedures for levying property 'in the possession or under the control of" a third person. See Cal. Code Civ. P. § 701.010(b)(1). That

---

[10] Case3:06-mc-80356-SI Document17,  Filed 05/15/07 ORDER DENYING EX PARTE APPLICATION FOR TURNOVER ORDER

section does not provide for issuance of a turnover order".

California law did not change, and the Order in Exhibit 4 was never set aside.

While the Order stating that the court could not order third parties… was never set aside, the Court, six months later, apparently made another order[11] "directing third party…" but does not specify **who** the third party… are. As Order is directed toward; the two orders are in direct conflict with one another.

Further, VeriSign has a list of documents of which they want this Court to take Judicial Notice. While the Court is reviewing these documents, please take Judicial Notice that Exhibits A & B are dated the same day. Exhibit A is supposed to be granting Zuccarini's Motion to Stay Pending Appeal; and Exhibit B is the one that everyone claims Ordered the transfer of domain names. If there was a Stay Pending Appeal, how was there also an Order to transfer the domain names?

VeriSign claims (MTD *fn4) that the "US Government was added as a party…" To be exact, the IRS was added, through the US Attorney's Office. Plaintiff OBJECTS to VeriSign's allegations that the US Government said or alleged that "Recognizing that he is the last party to have any right to possession of the disputed domain names…" VeriSign's actions and statements are clear evidence of cremin falsi, and an attempt to affect the ability of the court to impartially judge the case.

The IRS wanted to intervene, when they learned that the Court was going to allow DSH to auction off the domain names, due to the fact, that they want a slice of the pie; they never stated that Plaintiff does not have a right to the domain names. In fact the FTC felt so strongly that Plaintiff does have a right to the names, that they froze the registration in Plaintiff's name for an indefinite period of time. Surely, that cannot be construed as not having the right to the

---

[11] Case3:06-mc-80356-SI Document 48, Filed 11/04/07

12

domain names.  VeriSign, in order to get around their conversion, knows the only way around it is to allege that Plaintiff does not have a right to the domain names.  They have failed to offer why they transferred names frozen by the FTC to another entity.

Further, the CA District Court never said that Plaintiff did not have a right to the domain names, and the Writ obtained by DSH was not for a sale of them.  Theoretically, the plan was to draw the revenue until such time as the debt was satisfied, and then the names could be returned to the Plaintiff.  With revenue of Seventy Thousand Dollars ($70,000.00) annually, there was no reason to sell them.

Further, California law, "despite recognizing that domain names are intangible personal property subject to a common law action for conversion, see **Kremen**, 337 F.3d at 1024, does not authorize statutory turnover of domain names pursuant to the article governing judgment debtor examinations", see **Palacio Del Mar Homeowners Ass'n, Inc. v. McMahon**, 95 Cal. Rptr. 3d 445, 447 (Ct. App. 2009).

Before and after the ruling by CA District Court, the same thing has been held.  No one other than the Plaintiff has a right to the domain names at issue.

### ARGUMENT AND CITATIONS TO AUTHORITY

It appears that VeriSign complains that "Plaintiff has decided to try his luck before this Court".  While the statement is incorrect, as Plaintiff is seeking more than merely turning over rulings by another Court, Plaintiff is seeking redress for conspiracy, conversion, and although Plaintiff didn't list it as a cause of action, seeking redress for due process of law violations under color of law or color of authority.

**A.     Conspiracy.**

VeriSign claims that Plaintiff will never be able to show that VeriSign was part of the

conspiracy, and that Plaintiff didn't properly plead conspiracy.  If it is true that conspiracy or any of Plaintiff's other claims were not properly pled, he Moves the Court for Leave to Amend his complaint to properly plead the causes of action.

To set the record straight, the registrars (eNom and NSI), NameJet is the parent company of eNom… so the registrars were contacted, the registrars went to VeriSign (the registry) with the matter, there was a meeting of the minds, and the domain names were transferred.  The last step of the conspiracy, was the auction of the domain names by NameJet.  Although eNom and NSI, have protected VeriSign[12]

In **Hampton v. Hanrahan**, 600 F. 2d 600 - Court of Appeals, 7th Circuit 1979, it was held that a civil conspiracy is "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties `to inflict a wrong against or injury upon another,' and `an overt act that results in damage.'" **Rotermund v. United States Steel Corp**., 474 F.2d 1139 (8th Cir. 1973) (citation omitted).  In order to prove the existence of a civil conspiracy, a plaintiff is not required to provide direct evidence of the agreement between the conspirators; "[c]ircumstantial evidence may provide adequate proof of conspiracy." **Hoffman-LaRoche, Inc. v. Greenberg**, 447 F.2d 872, 875 (7th Cir. 1971). See also **United States v. Varelli**, 407 F.2d 735, 741-42 (7th Cir. 1969). Absent the testimony of a coconspirator, it is unlikely that direct evidence of a conspiratorial agreement will exist. Thus, the question whether an agreement exists should not be taken from the jury in a civil conspiracy case so long as there is a possibility that the jury can "infer from the circumstances [that the alleged conspirators] had a `meeting of the minds' and thus reached an understanding" to achieve the conspiracy's objectives. **Adickes v.**

---

[12] The registrars have a contract with not only the registrant of a domain name, but also has a contract with VeriSign.  VeriSign has a contract with ICANN, **that** contract **must** be protected at all costs, so VeriSign has been protected by the registrars.

*Kress & Co*., 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1609, 26 L.Ed.2d 142 (1970).

A plaintiff seeking redress need not prove that each participant in a conspiracy knew the "exact limits of the illegal plan or the identity of all participants therein." *Hoffman-LaRoche, Inc*., supra, 447 F.2d at 875. An express agreement among all the conspirators is not a necessary element of a civil conspiracy. The participants in the conspiracy must share the general conspiratorial objective, but they need not know all the details of the plan designed to achieve the objective or possess the same motives for desiring the intended conspiratorial result. To demonstrate the existence of a conspiratorial agreement, it simply must be shown that there was "a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences." *Id*.

**B.    Void Judgments.**

Plaintiff intends to show that having never been served with process, and due to fraud upon the court, and due process violations under color of law or color of authority, have resulted in judgments that are not merely voidable, but in fact void.  A void judgment can be brought by any person, at any time, in any court.

> "A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack. A void judgment is one which, from its inception, was a complete nullity and without legal effect.  *In re James*, 940 F.2d 46, 52 (3d Cir. 1991)  In the interest of finality, the concept of void judgments is narrowly construed."  *Lubben v. Selective Serv. Sys. Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir.1972) (footnote omitted), cited with approval in *Marshall v. Board of Educ., Bergenfield, New Jersey*, 575 F.2d 417, 422 n. 19 (3d Cir.1978).

A judgment "is void only if the court that rendered judgment lacked jurisdiction of the subject matter, or of the parties, or if the court acted in a manner inconsistent with due process of law." See 11 C. Wright & A. Miller, Federal Practice and Procedure § 2862 at 198-200 (1973) and cases cited therein.

Further, "[a] party attacking a judgment as void need show no meritorious claim or defense or other equities on his behalf; he is entitled to have the 442*442 judgment treated for what it is, a legal nullity." 7 J. Moore & J. Lucas, Moore's Federal Practice, ¶ 60.25[2], at 60-224 (1985); see also *Schwarz v. Thomas*, 95 U.S.App.D.C. 365, 369, 222 F.2d 305, 309 (1955) ("'[n]o showing of merits is necessary in support of a motion to vacate a void judgment'") (quoting *Wise v. Herzog*, 72 U.S.App.D.C. 335, 341, 114 F.2d 486, 494 (1940)); *Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir.1985); *Hicklin v. Edwards*, supra note 29, 226 F.2d at 413.

The Office Depot case, that brought about the post-judgment action in CA District Court, as well as the case at bar, was Ruled upon without Plaintiff having been served, and won on default.  It has long been held:  "Of course, an *in personam* judgment entered without personal jurisdiction over a defendant is void as to that defendant."   See, e.g., *Thos. P. Gonzalez Corp. v. Consejo Nacional De Produccion De Costa Rica*, 614 F.2d 1247, 1255 (9th Cir.1980).  "And, since service of process is the means by which a court asserts jurisdiction to adjudicate the rights of a party"  See *Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444-445, 66 S.Ct. 242, 246, 90 L.Ed. 185, 191 (1946); *FTC v. Compagnie de Saint-Gobain-Pont-A-Mousson*, 205 U.S.App.D.C. 172, 191, 636 F.2d 1300, 1319 (1980); *Attwell v. LaSalle Nat'l Bank*, 607 F.2d 1157, 1159 (5th Cir.1979), cert. denied, 445 U.S. 954, 100 S.Ct. 1607, 63 L.Ed.2d 791 (1980); *Amen v. City of Dearborn*, 532 F.2d 554, 557 (6th Cir.1976).  "it is uniformly held that a judgment is void where the requirements for effective service have not been satisfied" *Williams v. Capital Transit Co*., 94 U.S.App.D.C. 221, 224, 215 F.2d 487, 490 (1954); *Hospital Mortgage Group, Inc. v. Parque Indus. Rio Canas, Inc*., 653 F.2d 54, 57 (1st Cir.1981); *Gold Kist, Inc. v. Laurinburg Oil Co*., supra note 37, 756 F.2d at 19; *Central Operating Co. v. Utility Workers of America*, 491 F.2d 245, 251 (4th Cir.1974); *Mooney Aircraft, Inc. v. Donnelly*, 402

F.2d 400, 406 (5th Cir.1968); *Hicklin v. Edwards*, supra note 29, 226 F.2d at 413; *Varnes v. Local 91, Glass Bottle Blowers Ass'n*, 674 F.2d 1365, 1368 (11th Cir.1982). A waiver occurs when a defendant files either an answer or a preanswer motion to dismiss without challenging the sufficiency of the service. Fed.R.Civ.P. 12(b), (h)(1); see, e.g., *Pila v. G.R. Leasing & Rental Corp*., 551 F.2d 941, 943 (1st Cir.1977); *Golden v. Cox Furniture Mfg. Co*., 683 F.2d 115, 118 (5th Cir.1982); *Giannakos v. M/V Bravo Trader*, 762 F.2d 1295, 1298 (5th Cir.1985)

Clearly, as a defendant in *Office Depot*, and having not participated in any manner, Plaintiff did not waive the sufficiency of process or jurisdiction.  In the post-judgment action, Plaintiff continually challenged the jurisdiction, and was told that the action was in the nature of *quasi in rem* and only Plaintiff's property was involved, not the Plaintiff himself.

## C.  VeriSign's Responses and Rule 12(b)(6).

VeriSign appears to complain that Plaintiff's complaint doesn't contain sufficient factual matter, and that Plaintiff's complaint refers to "all defendants" together, without describing what actions each individual defendant took.  In attempting to piece together exactly what took place, and exactly which defendant or defendants took what part in the conspiracy, which led to conversion or theft, has been difficult due to especially, VeriSign's silence.

VeriSign, further knew that they were the reason that CA District Court was claiming to have jurisdiction in the Office Depot post-judgment action.  They also had actual knowledge that the FTC had frozen Plaintiff's domain names.  For them to have remained silent during the transfer was an act of fraud, and clearly shows they participated in the conspiracy.

## D.  Fraud.

A "close[ ] relat[ionship]" between nondisclosure and concealment, numerous decisions expressly distinguish between passive concealment — mere nondisclosure or silence — and

active concealment, which involves the requisite intent to mislead by creating a false impression or representation, and which is sufficient to constitute fraud even without a duty to speak. See, e.g., *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 629 (4th Cir.1999) (interpreting Virginia law); *Mudd v. Lanier*, 247 Ala. 363, 24 So.2d 550, 562-63 (1945); *Farm Bureau Policy Holders & Members v. Farm Bureau Mut. Ins. Co.*, 335 Ark. 285, 984 S.W.2d 6, 14-15 (1998); *Younan v. Equifax Inc.*, 111 Cal.App.3d 498, 169 Cal.Rptr. 478, 487 (1980); *Franklin v. Brown*, 159 So.2d 893, 898 (Fla.App.1964).

In short, at common law, no fiduciary relationship, no statute, no other independent legal duty to disclose is necessary to make active concealment actionable fraud, there is still an obligation not to purposefully conceal material facts with intent to deceive. *Strong v. Repide*, 213 U.S. 419, 430, 29 S.Ct. 521, 53 L.Ed. 853 (1909); *Tyler v. Savage*, 143 U.S. 79, 98, 12 S.Ct. 340, 36 L.Ed. 82 (1892); *Stewart*, 128 U.S. at 388, 9 S.Ct. 101. A duty to disclose may arise from the circumstances surrounding nondisclosure, such as when a defendant engages in some conduct, beyond mere silence, that rises to the level of active concealment. See, e.g., *United States v. Benny*, 786 F.2d 1410, 1418 (9th Cir.1986); *Bethka v. Jensen*, 250 A.D.2d 887, 672 N.Y.S.2d 494, 495 (1998); cf. *Meade v. Cedarapids, Inc.*, 164 F.3d 1218, 1222 (9th Cir.1999) ("[O]ne who makes a representation that is misleading because it is in the nature of a `half-truth' assumes the obligation to make a full and fair disclosure of the whole truth." (quoting *Gregory v. Novak*, 121 Or. App. 651, 855 P.2d 1142, 1144 (1993).

Of course, the "fraud statutes do not cover all behavior which strays from the ideal," *United States v. Brown*, 79 F.3d 1550, 1562 (11th Cir.1996), and "[n]ot all conduct that strikes a court as sharp dealing or unethical conduct is a `scheme or artifice to defraud.'" *Reynolds v. East Dyer Dev. Co*., 882 F.2d 1249, 1252 (7th Cir.1989). However, "active or elaborate steps to

conceal" information can constitute such a scheme. Id. at 1253; see also ***Keplinger***, 776 F.2d at 697-98 ("Obviously, we do not imply that all or even most instances of non-disclosure of information that someone might find relevant come within the purview of the mail fraud statute; nevertheless, under some circumstances concealment of material information is fraudulent."). Concealment often is accompanied by an affirmative misrepresentation or a violation of an independent statutory or fiduciary disclosure duty, but neither is "essential" for actionable fraud. ***Allen***, 554 F.2d at 410. What is essential is proof of a "scheme or artifice to defraud," which can be shown by deceptive acts or contrivances intended to hide information, mislead, avoid suspicion, or avert further inquiry into a material matter.  ***US v. Colton***, 231 F. 3d 890 - Court of Appeals, 4th Circuit 2000

## E.     Fraud Upon the Court to Obtain Rulings in One's Favor.

Courts throughout this state have repeatedly held "that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding  should not be permitted to continue to employ the very institution it has subverted to achieve her ends." ***Metropolitan Dade County v. Martinsen***, 736 So. 2d 794, 795 (Fla. 3d DCA 1999) (quoting ***Hanono v. Murphy***, 723 So. 2d 892, 895 (Fla. 3d DCA 1998)); see also ***Cox v. Burke***, 706 So. 2d 43, 47 (Fla. 5th DCA 1998); ***O'Vahey v. Miller***, 644 So. 2d 550, 551 (Fla. 3d DCA 1994); ***Kornblum v. Schneider***, 609 So. 2d 138, 139 (Fla. 4th DCA 1992) (1) ***Aoude v. Mobil Oil Corp***., 892 F.2d 1115, 15 Fed. R. Serv. 3d 482 (1st Cir. 1989)   (3) The following cases, in addition to ***Cox v. Burke***, appear to confirm that use of dismissal with prejudice and default as a sanction has increased dramatically over the past several years. ***Destafano v. State Farm Mutual Automobile Insurance Co***., 28 Fla. L. Weekly D1077 (Fla. 1st D.C.A. April 28, 2003); ***Long v. Swofford***, 805 So. 2d 882 (Fla. 3d D.C.A. 2003); ***Hogan v. Dollar Rent A Car Systems, Inc.***, 783 So. 2d

1211 (Fla. 4th D.C.A. 2001) (trial court's dismissal of personal injury action was warranted because of plaintiff's fraud regarding medical history); *Morgan v. Campbell*, 816 So. 2d 251 (Fla. 2d D.C.A. 2002); *Cabrerizo v. Fortune International Realty*, 760 So. 2d 228 (Fla. 3d D.C.A. 2000) (parties who are guilty of fraud or misconduct should not be permitted to employ the very institution they have subverted to achieve their end); *Desimone v. Old Dominion Ins. Co.*, 740 So. 2d 1233 (Fla. 4th D.C.A. 1999) (trial court's dismissal of action was justified because of plaintiff's fraud during discovery); *Baker v. Myers Tractor Services, Inc.*, 765 So. 2d 149, 25 Fla. L. Weekly D1561 (Fla. 1st D.C.A. 2000); *Babe Elias Builders, Inc. v. Pernick*, 765 So. 2d 119 (Fla. 3d D.C.A. 2000);

## CONCLUSION

Plaintiff has shown the Court substantial grounds for Denying all parties Motions to Dismiss. Further, because the rulings by the CA District Court are Void, and this Court has been shown that the Rulings by that Court were obtained through fraud and fraud upon the Court, and this Court has the power and authority to so Rule, Plaintiff Moves this Court to find the rulings by the District Court for the Northern District of CA, VOID.

If the Court decides not to rule the District Court of CA rulings as VOID, Plaintiff Moves the Court to DENY dismissal of his claims, but to keep the case here, or at the most, transfer to the local this Court deems best suited for such a case.

Respectfully submitted, this 7th day of September, 2010.

By: _____

JOHN ZUCCARINI, Pro Se
190 SW Kanner Highway
Stuart, FL  34997
raveclub@comcast.net
(772) 631-3887

**CERTIFICATE OF GOOD FAITH CONFERENCE**

I hereby certify that counsel for the movant has conferred with all parties or non-parties who may be affected by the relief sought in this motion in a good faith effort to resolve the issues but has been unable to do so or has made reasonable efforts to confer with all parties or non-parties who may be affected by the relief sought in the motion, but has been unable to do so.

_____

JOHN ZUCCARINI, Pro Se

21

## CERTIFICATE OF SERVICE

I hereby Certify that I have this 7th day of September, 2010 served upon the defendants, a true and correct copy of foregoing ***Plaintiff's Response in Opposition to Defendant VeriSign, Inc.'s Motion to Dismiss*** and ***Plaintiff's Motion to Strike Defendant eNom's Answers,*** through their attorney of file, with the USPS, First Class Mail, proper postage affixed thereto, and addressed, in addition by email to the stated email addresses, as follows:

**Namejet, LLC / Network Solutions, LLC**
Jamie Michelle Roos
Stein Sperling Bennett De Jong Driscoll & Greefeig, PC
25 West Middle Lane
Rockville, md 20851
Email: jhertz@steinsperling.com

Timothy B. Hyland
Stein Sperling Bennett DeJong Driscoll & Greenfeig PC
25 W Middle Lane
Rockville, MD 20850
Email: thyland@steinsperling.com

**VeriSign, Inc.**
John Anderson Camp
Carlton Fields
100 SE 2nd Street
Suite 4200 PO Box 019101
Miami, FL 33131-9101
Email: jcamp@carltonfields.com

Ronald L. Johnston
Arnold & Porter LLP
777 S Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Email: ronald.johnston@aporter.com

**Enom, Inc.**
Angela Kristin Steele
Greenberg Traurig
1221 Brickell Avenue
Miami, FL 33131
Email: steelea@gtlaw.com

Ian Ballon
Greenberg Traurig LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404
Email: ballon@gtlaw.com

Lori Chang
Greenberg Traurig LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404
Email: changl@gtlaw.com

Marlene Koch Silverman
Greenberg Traurig
1221 Brickell Avenue
Miami, FL 33131
Email: silvermanm@gtlaw.com


DATED: September 7, 2010

_____

       JOHN ZUCCARINI, Pro Se
       190 SW Kanner Highway
       Stuart, FL  34997
       raveclub@comcast.net
       (772) 631-3887

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### Case No. 10-CV-14178-MOORE/LYNCH

**JOHN ZUCCARINI,**
**Plaintiff**

            **vs**

**NAMEJET, LLC;**
**NETWORK SOLUTIONS, LLC;**
**VERISIGN, INC;**
**ENOM, INC;**
**Defendants**

_____/

## NOTICE OF FILING AMENDED FIRST PAGE AND EXHIBIT C FOR PLAINTIFF'S RESPONSIVE OBJECTIONS TO DEFENDANT VERISIGN, INC.'S RULE 12(b)(6) MOTION TO DISMISS and PLAINTIFF'S MOTION TO ENTER DEFAULT IN THE RECORD

COMES NOW, Plaintiff, John Zuccarini who files an Amended First Page and Exhibit C for *Plaintiff's Responsive Objections to Defendant VeriSign, Inc.'s Rule 12(b)(6) Motion to Dismiss, and Plaintiff's Motion to Enter Default in the Record.*

On page 1, line 3, within the section ARGUMENT, VeriSign Inc. was incorrectly identified as the "registrar". VeriSign Inc., should have been identified as the "registry". In addition to stating this correction I have attached a corrected first page.

Within Exhibit C of the document, the next to last line of the first page did not print correctly, therefore I am reattaching the entire document which consists of two pages.

1

Respectfully submitted, this 8th day of September, 2010.

By: _____

        JOHN ZUCCARINI, Pro Se
        190 SW Kanner Highway
        Stuart, FL  34997
        raveclub@comcast.net
        (772) 631-3887

## CERTIFICATE OF SERVICE

I hereby Certify that I have this 8th day of September, 2010 served upon the defendants, a true and correct copy of foregoing Amended First Page and Exhibit C for ***Plaintiff's Responsive Objections to Defendant VeriSign, Inc.'s Rule 12(b)(6) Motion to Dismiss, and Plaintiff's Motion to Enter Default in the Record***,  by pro Se Defendant with the USPS, First Class Mail, proper postage affixed thereto, and addressed, in addition by email to the stated email addresses, as follows:

**Namejet, LLC / Network Solutions, LLC**
Jamie Michelle Roos
Stein Sperling Bennett De Jong Driscoll & Greefeig, PC
25 West Middle Lane
Rockville, md 20851
Email: jhertz@steinsperling.com

Timothy B. Hyland
Stein Sperling Bennett DeJong Driscoll & Greenfeig PC
25 W Middle Lane
Rockville, MD 20850
Email: thyland@steinsperling.com

**VeriSign, Inc.**
John Anderson Camp
Carlton Fields
100 SE 2nd Street
Suite 4200 PO Box 019101
Miami, FL 33131-9101
Email: jcamp@carltonfields.com

Ronald L. Johnston
Arnold & Porter LLP
777 S Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Email: ronald.johnston@aporter.com

3

**Enom, Inc.**
Angela Kristin Steele
Greenberg Traurig
1221 Brickell Avenue
Miami, FL 33131
Email: steelea@gtlaw.com

Ian Ballon
Greenberg Traurig LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404
Email: ballon@gtlaw.com

Lori Chang
Greenberg Traurig LLP
2450 Colorado Avenue
Suite 400E
Santa Monica, CA 90404
Email: changl@gtlaw.com

Marlene Koch Silverman
Greenberg Traurig
1221 Brickell Avenue
Miami, FL 33131
Email: silvermanm@gtlaw.com


DATED: September 8, 2010

_____

JOHN ZUCCARINI, Pro Se
190 SW Kanner Highway
Stuart, FL  34997
raveclub@comcast.net
(772) 631-3887

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 10-CV-14178-MOORE/LYNCH**

**JOHN ZUCCARINI,**
**Plaintiff**

    **vs**

**NAMEJET, LLC;**
**NETWORK SOLUTIONS, LLC;**
**VERISIGN, INC;**
**ENOM, INC;**
**Defendants**
_____/

**PLAINTIFF'S RESPONSIVE OBJECTIONS TO DEFENDANT**
**VERISIGN, INC.'S RULE 12(b)(6) MOTION TO DISMISS and**
**PLAINTIFF'S MOTION TO ENTER DEFAULT IN THE RECORD**

  COMES NOW, Plaintiff, John Zuccarini and files his *Plaintiff's Responsive Objections to Defendant VeriSign, Inc.'s Rule 12(b)(6) Motion to Dismiss, and Plaintiff's Motion to Enter Default in the Record.* In support of Plaintiff's Responsive Objections, and Motion to Enter Default in the Record, Plaintiff incorporates by reference the Responsive Objections filed to all other Defendant's Motions to Dismiss, as if fully restated herein.

**ARGUMENT**

**A.**  **The Illegal Transfer of John Zuccarini's Domain Names and VeriSign's Culpability.**

  There are two central issues before The Court related to VeriSign Inc. ("VeriSign") the registry for all .com and .net domain names, and it's working relationship with all .com and .net registrars. That is, does a domain name registry have the power to correct an illegal action by a domain name registrar, as in this case the illegal transfer of domain names by the registrars, and does a Federal Court Order have the authority to Order a registry to rectify such an illegal action by a registrar. The answer to both is unquestionably yes.

5

# Exhibit C

6

http://news.cnet.com/2100-1038_3-5083161.html

September 26, 2003 5:08 PM PDT

Suit filed over VeriSign domain redirect
By John Borland
Staff Writer, CNET News

September 22, 2003
ICANN asks VeriSign to pull redirect service
September 21, 2003
VeriSign sticks with redirect service
September 18, 2003
VeriSign redirects error pages

September 16, 2003 VeriSign is facing a new class-action lawsuit over its controversial "Site Finder" service, which redirects all misspelled or unassigned .com domain names to a search page managed by the domain name registrar.
The service appeared on the Web as a surprise last week, replacing the familiar error pages typically found when a Web surfer mistypes an Internet address. Criticism has been harsh and bitter from competitors and many broad Internet technical circles which say the action interferes with other Net applications.

"This action violates many of the architectural principles that have so successfully supported the phenomenal growth of the Internet to date," Lynn St.Amour, president of the Internet Society, wrote in a letter Friday to the Internet Corporation for Assigned Names and Numbers (ICANN), the body responsible for domain name policy. "Not to heed these principles or the advice of numerous technical Internet groups is extremely irresponsible and is putting the stability of the Internet at considerable risk."

VeriSign is able to exert control over all unassigned and misspelled domain names because it serves as the government-approved registry, or ultimate traffic director, for domain names ending in .com or .net.

Ordinarily, a Web browser translates a domain name such as www.news.com into an Internet address by checking domain name servers across the world that hold this information, much like a phone directory that equates names with telephone numbers. Previously, if a name did not exist--whether misspelled or simply unassigned--Web browsers would find themselves at the familiar DNS (domain

7

name system) error page.

Some Web browsers and browser add-ons would redirect these mistakes to another search page or suggest possible alternatives.

The new VeriSign service points all misspellings to the same Site Finder search page, however, making it difficult or impossible for other companies to provide those browser redirection services. Critics say it also could harm spam filters, some of which relied on the old system to block e-mail that came from false addresses.

The new class-action suit, filed by longtime Internet litigator Ira Rothken on behalf of a California e-mail and device synchronization software provider, said VeriSign is abusing its power over the domain name system.

"VeriSign's redirection of .com and .net traffic not only is earning, or is intended to earn, profits for VeriSign, but it subverts the basic infrastructure of the Internet, to the detriment of numerous entities," the suit says. "VeriSign's actions have exceeded and continue to exceed the scope of its authorized monopoly status--its establishment of Site Finder redirection service was not acting in compliance with any clearly articulated government program, and it was not acting at the direction or with the consent of any federal agency."

Other suits have been filed against the domain name company on behalf of private companies or individuals, but Friday's was the first to seek class-action status.

A VeriSign representative declined to comment, saying the company does not remark on pending litigation. Previously, the company has said it would examine technical objections to the Site Finder redirect service, but indicated that it planned to keep it operating despite criticism.