1

**Law Offices of Michael Blacksburg**
Michael Blacksburg (Bar No. 218179)

2

315 Noe Street
San Francisco, CA 94114

3

Telephone:  (415) 861-9900
Facsimile:   (415) 861-9908

4

Court Appointed Post-Judgment Receiver

5

6

7

**UNITED STATES DISTRICT COURT**

8

**NORTHERN DISTRICT OF CALIFORNIA**

9

10

11

**OFFICE DEPOT, INC.,** a Delaware corporation,

Case No. C-06-80356-Misc.

12

Plaintiff,

**RECEIVER'S REPORT OF SALE OF DOMAIN NAMES AND DISTRIBUTION OF PROCEEDS**

13

vs.

14

15

**JOHN ZUCCARINI,** individually and d.b.a. COUNTRY WALK; and DOES 1 through 10, inclusive,

16

Defendants.

17

18

**DS HOLDINGS, LLC,** a Colorado limited liability company,

19

Assignee,

20

vs.

21

22

**JOHN ZUCCARINI,** individually and d.b.a. COUNTRY WALK; and DOES 1 through 10, inclusive,

23

Defendants.

24

25

26

27

28

1

2          Pursuant to Court Order Granting Motion to Modify 9/07/10 Order Authorizing Sale of

3   Domain Names and Distribution of Proceeds (and Denying Emergency Motion to Stay Hearing),

4   Receiver held an auction of the Domain Names on April 8, 2011 in Palo Alto, California.  The

5   Domain Names were auctioned as one block and the winning bidder paid $302,000 for the

6   Domain Names.  The winning bidder paid the sum in full and Receiver delivered, or is in the

    process of delivering, the Domain Names and disbursed all funds in the receivership.

7

8   **Auction of the Domain Names**

9          On March 29, 2011, Receiver caused to be posted a Notice of Auction and Sale for the

10  Domain Names.  The Notice was posted in three public places in Mountain View, California.

11  Receiver also served notice of the sale on Zuccarini by mail and by electronic mail, as was his

12  request.

13         On April 6, 2011, Receiver transferred to David Allison, owner of the federal trademark

14  registration, "CCC Cheat Code Central," the domain name, www.cheatcodecentral.com.

15   Receiver provided Zuccarini an opportunity to request how the Domain Names were to be sold

16  and he requested individually, if possible.  Receiver researched the value of the Domain Names

    and the efficacy of auctioning them individually or as one block.

17

18         In determining Receiver's options for selling these domain names, Receiver reviewed

19  valuation document for the previously-scheduled TRAFFIC convention auction prepared by Mr.

    Rick Latona.  Mr. Latona informed Receiver that the reserves and values were based on the

20  auction occurring over the course of one week and through an international, online auction

21  process that would congregate thousands of bidders.  Absent this congregation, he believed the

22  values to be far less.

23   Receiver then spoke with a second, local auctioneer who informed Receiver that selling off

24  property individually will generally obtain a higher value, but if there are limited bidders, selling

25  individually could drive down prices.

26         Given that this auction is live, in-person, and occurring in a two hour window, Receiver

27  chose a single block auction to maximize, or approximate the lost potential of the TRAFFIC

28  convention.  In doing so, those who appeared were a congregation of bidders (domestic and

Case No. C-06-80356-Misc.                     2

international) who believed the domains worth the effort to appear at a live auction in Santa Clara County, California.

On April 8, 2011, Receiver conducted a live auction in Palo Alto, California, within the county of Santa Clara, at the Cubberley Community Center. The only fees associated with the auction was $425.21 for renting a room at the Cubberley Community Center and posting of the notices.

The live auction was attended by three individuals, including a representative for DS Holdings, LLC. Each bidder provided proof that he had a minimum of $10,000 in certified funds. Receiver also requested, but did not require, each bidder to provide proof of his maximum bid if he chose to elect the sale as a credit transaction. Each bidder honored the request and no bidder bid more than his maximum allowable bid.

Over the course of 45 minutes, the winning bidder bid $302,000. As the reserve amount recommended for the TRAFFIC convention auction was $275,000, this current auction brought in a sum $27,000 greater than the minimum total reserve recommended for a week-long live and online auction set for a major domain name trade show.

The winning bidder requested anonymity given Zuccarini's previous threats of a lawsuit. The Receiver was not the winning bidder and has no ownership interest in the winning bidder or an interest in any purchase of the sale of the Domain Names. The winning bidder elected to treat the sale as a credit transaction and immediately provided Receiver with $30,200. Within five days, the winning bidder delivered the balance of the amount bid. Thereafter, Receiver provided the winning bidder with a certificate of sale.

Beginning April 13, 2011 and ending approximately May 9, 2011, Receiver caused the Domain Names to be transferred to the winning bidder, or at the request of the winning bidder, to winning bidder's attorney. Receiver is no longer in possession of any Domain Name associated with this matter.

**Disbursements**

As of March 1, 2011, Receiver held $188,634.90 in funds generated by the Domain Names (and an additional receivable of $10,000, which was paid on April 14, 2011). Pursuant to

Court Order Paragraph 4, on March 14, 2011, Receiver paid the IRS $92,003.46, which constituted $90,320.77 plus statutory interest that has accrued since December 31, 2010. Receiver also paid DS Holdings, LLC $90,000 as a first distribution toward its $169,153.59 plus statutory interest accrued since December 19, 2006.

Upon the completion of the auction and the winning bidder paying the full sum, Receiver held $308,631.44.  Receiver paid DS Holdings, LLC, $164,686.13, constituting its final disbursement pursuant to the Court's Order and its judgment in this matter.

Receiver's final invoice of $23,299.51, for services and costs, was provided to all parties. The IRS provided Receiver with its current lien of $387,011.75 against Zuccarini.  Receiver distributed $130,645.80 to the IRS, constituting 100% of the balance of the funds in the receivership.  As the remaining funds were less than the IRS's lien, no funds were distributed to Zuccarini.

**Status of Domain Names**

All Domain Names have been delivered, or are in the process of being delivered, to the winning bidder.  There are 21 domain names currently registered with DomainDiscount24, a German-based company, that has not "pushed" the domain names to the winning bidder's account.  Similarly, there are three domain names registered with Network Solutions that the wining bidder has not transferred to the winning bidder's account.

In both instances, the winning bidder is required to take the next steps towards acquiring possession of these domain names.  Receiver is in communication with the winning bidder regarding these domain names.


**RESPECTFULLY SUBMITTED,**


Dated:  May 13, 2011

_____

MICHAEL BLACKSBURG

Post Judgment Receiver for Case No. C-06-80356-Misc.

Case No. C-06-80356-Misc.

4

**RECEIVER'S REPORT OF SALE**